### MOORE, County Assessor, et al. v. GAS SECURITIES CO. ·

(Circuit Court of Appeals, Eighth Circuit. December 5, 1921.)

No. 5719.

1. **Waters and water courses ⬤⟳231—Under Colorado statute, irrigation district taxes must be collected with general taxes.**

   Under Colorado Irrigation District Act 1905, § 21, as amended in 1907 (Rev. St. Colo. 1908, § 3460), which provides that "it shall be the duty of the county treasurer of each county in which any irrigation district is located in whole or in part, to collect and receipt for all taxes levied as herein provided in the same manner and at the same time and on the same receipt as is required in the collection of taxes upon real estate for county purposes," a county assessor is without authority to discriminate against taxes levied for district purposes by segregating them and refusing to include them in the totals against the lands as shown on the assessment roll, but placing them on a separate roll, and a county treasurer may not lawfully demand, receive, and receipt for all other taxes against the lands, leaving district taxes uncollected.

2. **Taxation ⬤⟳319 (1)—Forms prescribed by state tax commission must conform to statutory requirements.**

   Under Laws Colo. 1911, p. 612, creating a state tax commission and (section 13, subd. 3) giving it power to prescribe a uniform system of procedure in the assessor's office, and all forms, blanks, books and records used

⬤⟳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

therein and providing that "no other system, forms or blanks," etc., "shall be used in such offices excepting those prescribed by the commission," the forms prescribed must conform to the statutes, and the commission cannot insist that the operation of a statute be suspended that its idea of forms may be carried ino effect.

3. **Constitutional law** $\Longleftrightarrow$ **143—State statute held unconstitutional, as impairing obligation of contracts with bondholders.**

At the time of issuance and sale of bonds by a Colorado irrigation district, the statute under which they were issued provided (Rev. St. Colo. 1908, § 3461) that "the revenue laws of this state for the assessment, levying and collection of taxes on real estate for county purposes, except as herein modified, shall be applicable for the purposes of this act, including the enforcement of penalties and forfeiture for delinquent taxes," the revenue laws provided that all taxes on land should be payable one half on or before the last day of February each year, and the other half on or before the last day of July; that on default there should be a sale for all taxes delinquent, and if there was no bidder the land should be struck off to the county, and could be redeemed only by payment of all taxes due, with interest and penalties. By Laws Colo. 1915, p. 315), said section 3461 was amended by providing for a separate sale for delinquent district taxes. and that if there was no bidder the land should be struck off to the district, which should be entitled to a deed on payment of such sum as the county commissioners might fix. ·Held, that such amendment gave the bondholders a different and less effective remedy for the collection of their bonds, and was void, as impairing the obligation of their contract, in violation of Const. U. S. art. 1, § 10.

In Error to the District Court of the United States for the District of Colorado; Robert E. Lewis, Judge.

Petition for mandamus by the Gas Securities Company against E. B. Moore, Assessor of Adams County, Colo., and others. Writ granted, and defendants bring error. Affirmed.

Bert Martin and Samuel·H. Morrow, both of Denver, Colo., for plaintiffs in error.

Platt·Rogers, of Denver, Colo. (Edmund Rogers and Robert G. Strong, both of Denver, Colo., on the brief), for defendant in error.

Before CARLAND, Circuit Judge, and YOUMANS and JOHNSON, District Judges.

YOUMANS, District Judge. This cause was submitted to the court below on the petition for mandamus and the response thereto. There was no dispute as to the essential facts, either in the court below or in this court.

. The East Denver municipal irrigation district was a corporation organized on the 22d day of November, 1909, under an act of the General Assembly of Colorado entitled "An act in relation to irrigation districts," approved May 3, 1905 (Laws 1905, p. 246), and all acts amendatory thereof. On the 8th of October, 1910, the landowners and taxpayers of the irrigation district, at an election duly held, authorized an issue of bonds to the amount of $3,000,000 for the purpose of constructing an irrigation system for the lands of the district. On the 10th of October, 1910, the board of directors of the district, pursuant to such election, directed the issuance of bonds in the amount author-

ized by the voters. During the year 1914 the defendant in error, a corporation of the state of New York, purchased bonds of the district to the amount of $628,500. On the 8th of May, 1919, the defendant in error obtained judgment in the court below on interest coupons on said bonds to the amount of $226,170.95, which judgment was and is unpaid.

In December, 1919, the court below issued a writ of peremptory mandamus, commanding the board of county commissioners of Adams county, Colo., to fix the rate and make the levy to pay the judgment. Levies for each of the years 1919 and 1920 were to be at such rate as to be equivalent to $2 upon each acre in the district, and for the year 1921 at such rate as would be necessary to complete the payment of the judgment. The defendant in error demanded of E. B. Martin, one of the plaintiffs in error, that he, as assessor, extend the levy for the payment of the judgment in the proper column of the tax list opposite each piece of real property assessed, and that he total said taxes with the state, county, and other taxes, and at the end of the tax list prorate the total of said taxes to the several funds. The assessor proceeded to comply with such demand, but on the 22d of January, 1920, the Colorado state tax commission ordered him not to incorporate irrigation district taxes in the total of general property taxes. The said assessor then refused to comply with the demand of defendant in error. The order of the state tax commission was by letter, which reads as follows:

"State of Colorado, Colorado Tax Commission.

"January 22, 1920.

"Forms.

"Mr. E. B. Moore, Assessor, Adams County, Brighton, Colorado—Dear Sir:

"It has recently come to our attention that you have proposed a change in form of your tax roll, in order to include in the total of general property taxes special taxes levied for irrigation districts. Your attention is called to the fact that, under the statutes creating the tax commission, all authority for establishing or changing forms is vested in this body. We have heretofore approved the form which your county has used and the manner of recording the various tax levies thereon, and we do not approve any change from that method. In other words, we do not consider it advisable to incorporate irrigation taxes in the total of general property taxes. There are numerous reasons for keeping these taxes separate, which need not be gone into at this time.

"Very truly yours,                    Colorado Tax Commission,
                                      "E. B. Morgan, Chairman."

After stating the foregoing facts and setting out the order of the Colorado tax commission. the petition of the defendant in error contains the following allegations:

"Your petitioner alleges that the object and purpose of said order, and of the observance of the same by the said assessor, was and is to deny to your petitioner, and the other holders of the bonds of said irrigation district, the benefit of the revenue laws of the state of Colorado in the assessment, levying, and collection of the special tax provided for by the Irrigation District Law for the payment of the bonds of the said irrigation district and the interest thereon, and to discriminate said special tax from the state, county, school, and other taxes, in the collection of said taxes. and by not demanding the payment of the total of all taxes, including said special tax, to cause said

special tax to remain unpaid, and to otherwise encourage a refusal to pay said special tax.

"12. Your petitioner further shows to the court that the only levy heretofore made by the county commissioners of Adams county for the payment of interest on the bonds of your petitioner, and other bonds of said district then outstanding, was in the year 1913; but the assessor of said county then failed and neglected to include said levy in a proper column in the tax roll, or to include the same in the total of taxes assessed against the real property in said irrigation district, but, on the contrary, made a separate and different roll for the levies made on account of said district, and thereafter said James W. Campbell, the treasurer of said county, in notifying each person in said irrigation district from whom a tax was due on real estate in said district, failed and refused to include the levy for interest on bonds of said district in the amount stated to be due from such person, and never required or demanded the payment of the levy for such interest at the times of collecting taxes for other purposes, but, on the contrary, deliberately and intentionally, and for the purpose of aiding in the avoidance of the payment of said tax, has offered to give receipts for all other taxes other than those levied for the payment of said bonds, and has aided and abetted those desirous of avoiding the payment of said taxes for interest.

"13. Your petitioner also shows to the court that said James W. Campbell, as treasurer of said county, has treated the levy of taxes for the payment of interest as made in 1913, and the levies of taxes as made in subsequent years for the general expenses of said district, as separate and distinct from levies made for state, county, school, and other purposes, and has refused to include said tax for the payment of interest in the total tax of the owners of lands in said district, and has not demanded payment of said tax for interest as part of the tax due from said owners of lands, but, on the contrary, has allowed and encouraged the payment of all taxes other than those for bond interest and other district taxes whereby the taxes for state, county, and school purposes have been generally paid, and said interest tax has not been paid, and said James W. Campbell, as treasurer, threatens to continue the same practice with respect to the levies heretofore by the court commanded to be made.

"14. And your petitioner further shows that said treasurer has heretofore distinguished the levy made in 1913 for interest on the bonds of said district from the levies made for other purposes, and in making sales of lands in said district for delinquent taxes has refused to include as part of said delinquent taxes the taxes which then remained unpaid on account of interest on said bonds, and has, by separate advertisement, with separate and additional penalties and costs, offered for sale the lands in said district on which said levy for interest on said bonds had not been paid, and has executed and delivered separate and different certificates of purchase for said separate and distinct sales, and said treasurer has for the unpaid taxes for the general expenses of said district made separate and distinct sales, with separate and additional penalties and costs, all of said sales for delinquent taxes being made in the year 1919 for the taxes of 1913 and subsequent years, and although all of the taxes of said years were delinquent at the times of said sales the said treasurer refused to include all of said delinquent taxes in one sale, but made advertisement and sale for each of said previous years, with penalties and costs in each of said sales, and the said James W. Campbell threatens to continue to discriminate all levies made on account of bond interest from those for state, county, school, and other purposes, and in case of failure to pay taxes on the land in said district to make separate and distinct sales, and to give separate and distinct certificates of purchase.

"15. By reason of the acts and doings of said treasurer, as above set forth, the undertaking of the state of Colorado to levy and collect taxes for the payment of the bonds issued by the said irrigation district and the interest thereon in the same manner, at the same time, and with the like effect as in case of all other taxes, is wholly nullified and set at naught, and your petitioner and other holders of the bonds of said district are denied the taxing

power of the state in the collection of said bonds and the interest thereon, and they are wholly without remedy, except by the interposition of this court.

"16. By reason of the acts and doings of said treasurer, as above set forth, none of the sales of lands in said district for delinquent taxes either for state, county, school, or other purposes, or for interest on bonds, or the general expenses of said district, have been in accordance with the statutes of Colorado, and no legal tax deeds on account of said sales can be made, and said practice, if continued as threatened, will defeat and render invalid all such tax sales, and thereby prevent sales being made, and render impossible the collection by proper legal methods of the moneys due and to become due to your petitioner on account of interest and principal of said bonds.

"17. The respondent James W. Campbell, as treasurer of Adams county, fails, neglects, and refuses, and threatens to continue to refuse, proper demand by your petitioner having been made therefor, to collect and receipt for the tax levied to pay the said judgment of your petitioner, and all other irrigation district taxes, in the same manner, at the same time, and on the same receipt as is required in the collection of taxes for state, county, and other purposes, and to apply the general revenue laws of the state to the collection of and receipt for said taxes.

"18. By reason of the failure and refusal of the said respondent E. B. Moore, as county assessor of Adams county, induced thereto by reason of said erroneous order of the Colorado state tax commission, to extend the said levy to pay the judgment of this court in the proper column of the tax list for the year 1919, and to total said tax with the state, county, and other taxes for said year, and by reason of the failure, neglect, and refusal of the said assessor to extend in the appropriate column, as bond fund levy to be accounted for separately and solely applicable upon the judgment heretofore rendered in this court, the levy made and adopted by the board of county commissioners of Adams county to pay said judgment, and by reason of the failure of the respondent James W. Campbell, as treasurer of Adams county, to collect and receipt for the tax levy to pay the judgment of your petitioner, and all other irrigation district taxes, in the same manner, at the same time, and on the same receipt as required in the collection of taxes for state, county, and other purposes, and to apply the general revenue laws of the state to the collection and receipt of said taxes, your petitioner is without remedy to obtain satisfaction and payment of said judgment or of the coupons due or to become due to it, as the owners of the bonds hereinbefore described, because the methods provided by said statutes of the state of Colorado for the payment of the obligations of said district is the only method by which said judgment or said coupons can be paid."

Mandamus was granted in accordance with the prayer of the petition. After appropriate recitals, the order of the court reads as follows:

"Wherefore, by reason of the premises, you, the said E. B. Moore, as assessor of said Adams county, are commanded each and every year, until the judgment rendered in favor of said Gas Securities Company, and against the said East Denver municipal irrigation district, shall have been fully satisfied and discharged, to extend on the tax list of said Adams county the tax levied each year by the board of county commissioners of said county, on the lands in said East Denver municipal irrigation district, to pay the judgment of said court in manner as provided in the writ of mandamus heretofore issued by our said court against said board of county commissioners, the same to be in tabular form, and in separate columns, in the same manner, and in the same form as state, county, and other taxes are extended on said tax list, and at the end of each item of land in said district, assessed and taxed in said tax list, to total the amount of said tax with the state, county, and other taxes, and to deliver said tax list to the county treasurer of said county, in the form and manner and with the total of taxes on lands in said district, as above set forth, to the end that the said treasurer shall be commanded to collect the said total tax on the lands in said district, at the times provided by statute,

and shall not receive or receipt for payments made for less than said total tax.

"And you, the said E. B. Moore, as assessor, are further commanded, each and every year, and until said judgment shall be satisfied, to make known to our said District Court, immediately upon the completion of the tax list and assessment roll of said county of Adams, and prior to the delivery thereof to the county treasurer of said county, how you shall have executed this writ, and upon the making of each of said returns you will then and there have this writ.

"And you, the said James W. Campbell, as treasurer of said county, are hereby commanded, during the year 1920 and each and every year until said judgment rendered in favor of said Gas Securities Company; and against the East Denver municipal irrigation district, shall have been fully satisfied, to demand of each owner of land in said irrigation district the payment of the total of all taxes levied against said land, including the taxes levied for the payment of said judgment, and to collect the total of said taxes, at the times and in the manner provided by statute, and to-issue a single receipt therefor, or for each installment thereof, which shall include the tax levied for the payment of said judgment; and this you shall do, notwithstanding said taxes may appear on different tax lists. And you are also commanded, in case of delinquency in the payment of said taxes on any of the lands in said district, to make sale of the same from time to time, and in the manner provided by statute, for the said total amount due, including taxes for the payment of said judgment; that is to say, to make but one sale for the total of all taxes levied on lands in said district, and giving but one certificate of sale, and not to make separate sales for taxes levied against lands for the payment of irrigation district expenses, or for the payment of the judgment. If there are no bidders for any of said lands at said sales, the same shall be struck off to the county of Adams, and a certificate of purchase issued to said county as provided by statute.

"And you, the said James W. Campbell, as treasurer of said county, are further commanded, on the 5th day of March and the 5th day of August each year, until said judgment has been satisfied, to make known to our District Court how you shall have executed this our writ in respect to the collection of taxes, and in the event of making sales of lands in said district for delinquent taxes, you are commanded, immediately upon making sales of lands for taxes, to make known to our said District Court how you shall have executed this our writ in respect to making such sales and of striking off said lands in the event there are no bidders."

[1] The correctness of these orders is challenged here. The contention of the defendant in error is that under the law of Colorado special taxes levied for irrigation districts should be included in the total of general taxes and collected at the same time. The plaintiffs in error, as assessor and treasurer of Adams county, contend that the law is otherwise, and that they are bound by the orders of the state tax commission. The controversy involves the construction of a sentence of section 21 in the act of May 3, 1905, of the General Assembly of Colorado entitled "An act in relation to irrigation districts." As passed in 1905, the sentence in section 21 read as follows:

"It shall be the duty of the county treasurer of each county in which any irrigation district is located, in whole or in part, to collect and receipt for all taxes levied as herein provided, in the same manner and at the same time as is required in the receipt for and collection of taxes upon real estate for county purposes."

On April 3, 1907 (Laws 1907, p. 490, § 3), that sentence was amended to read as follows:

"It shall be the duty of the county treasurer of each county in which any irrigation district is located, in whole or in part, to collect and receipt for all

taxes levied as herein provided in the same manner and at the same time, and on the same receipt as is required in the collection of taxes upon real estate for county purposes."

The amendment of 1907 is a part of section 3460 of the Revised Statutes of Colorado of 1908. The General Assembly of Colorado on April 4, 1919 (Laws 1919, p. 483, § 1), again amended section 21, but left unchanged the sentence above quoted in the amendment of 1907.

Counsel for plaintiffs in error contend for the application of the rule that the courts of the United States will follow the decisions of the Supreme Court of a state upon the construction of a statute of that state. Counsel argue that section 21 as amended, as above quoted, has been construed by the Supreme Court of Colorado in the case of Interstate Trust Co. v. Smith, 66 Colo. 525, 181 Pac. 126, decided May 5, 1919. The opinion in that case is short, and we will quote the whole of it.

"Plaintiff in error, plaintiff below, the Interstate Trust Company, brought this action to restrain defendant, as county treasurer of Montezuma county, from accepting and giving receipts for the general county, state and school taxes levied against lands in the Montezuma Valley irrigation district, without at the same time requiring the payment of the Montezuma Valley irrigation district taxes. The defendant interposed a demurrer to the complaint, which was sustained. Plaintiff elected to stand upon its complaint, and a judgment of dismissal followed. Plaintiff brings the cause here for review.

"The case of Interstate Trust Co. v. Montezuma Valley Irr. Dist., et al. (decided by this court at this term) 181 Pac. 123, determines that irrigation district assessments are special taxes levied for local improvements only. A refusal, therefore, of the county treasurer to accept general state, county, and school taxes unless and until the taxpayer had also paid his irrigation district assessments, in our opinion finds no support either in reason or law, statutory or otherwise. The judgment of the trial court is right, and should be affirmed."

In its opinion the Supreme Court of Colorado made no reference to any part of section 21 as above quoted, nor to the act approved April 4, 1919. The court in its opinion refers to the case of Interstate Trust Co. v. Montezuma Valley Irr. Dist. et al. (decided on the same day) 66 Colo. 219, 181 Pac. 123. In its opinion in the last-named case the Supreme Court of Colorado did not undertake to construe section 21, above referred to. The following quotation from the opinion in that case will show that the question involved there was the power of a board of directors of an irrigation district to levy a cumulative tax:

"In these proceedings, plaintiff below, the Interstate Trust Company, sought by writ of mandamus to compel the board of directors of the Montezuma Valley irrigation district to certify an additional tax by cumulative levy to the county commissioners of that county, for the purpose of paying off some $25,000 in warrants of that district and held by it, amounting, with interest, to approximately $38,000. There was a demurrer to the writ on the ground that it did not state sufficient facts to constitute a cause of action. The demurrer was sustained, and, plaintiff electing to stand by its case as made, a judgment of dismissal was entered. The trust company brings the cause here for review.

"It is admitted that sufficient levies have been made to pay the warrants in question in full, and that such levies are also sufficient to cover in addition a margin of 15 per cent. for deficiencies. It appears, however, that many taxpayers are delinquent, and that for this reason the warrants have not been discharged. Therefore plaintiff claims that it is the clear legal duty of the

defendant officers to levy and collect an additional tax to pay and discharge these warrants. It is urged that the words, 'such additional amount as may be necessary to meet any deficiency in the payment of said expenses theretofore incurred,' found in the statute (Laws 1905, p. 259, § 18), confer the power upon, and make it the duty of, the district officials to levy a cumulative tax for this purpose. The outcome of this suit, therefore, depends wholly upon the construction to be given the Irrigation District Act.

"It is clear that the claim of plaintiff can be upheld only upon the theory that the clause above quoted gives the board of directors of the district general taxing powers, and that the taxes levied under the act are in the nature of general taxes, and are not local or special in character. The question is whether irrigation districts are organized for the purpose of making local improvements, with the power to levy local improvement taxes only, or whether they are so closely akin to municipal corporations in their nature and objects as to give them general taxing powers."

The conclusion of the court is stated in the opinion as follows:

"It is manifest that to command the defendants to make the proposed levy would be to enjoin upon them the doing of a thing which they are not only not required by law to do, but which they in fact have no legal right to do. The judgment of the trial court is sound and should be affirmed."

The Supreme Court of Colorado in that case was construing section 18 of the act of 1905 (section 3457 of the Revised Statutes of Colorado of 1908), which section reads as follows:

"It shall be the duty of the board of directors, on or before September first of each year, to determine the amount of money required to meet the maintenance, operating and current expenses for the ensuing year, and to certify to the county commissioners of the county in which the office of said district is located, said amount, together with such additional amount as may be necessary to meet any deficiency in the payment of said expenses theretofore incurred."

In neither of the two cases above referred to does the Supreme Court of Colorado construe the provision in section 21 which requires irrigation taxes to be collected and receipted for "in the same manner and at the same time and on the same receipt as is required in the collection of taxes upon real estate for county purposes." In our opinion the plain wording of the statute leaves nothing for construction, and, there being no construction of a state court to the contrary, we adopt, that construction which the plain wording of the statute indicates. It is true that there is a distinction in law between special taxes levied on real estate for making an improvement, and general taxes for county and state purposes; but there is no such inherent difference between the two classes of taxes as prevents the collection of both classes in the manner that the statute directs.

[2] The state tax commission of Colorado is given power by the statute (Laws 1911, p. 616, § 13, subd. 3.):

"To prescribe a uniform system of procedure in the assessor's office and the form and size of all tax schedules, tax rolls and warrants, field books, plat and block books and maps, and all other notices and forms furnished to taxpayers, and all blanks, books and records used in the offices of county assessors, and no other system, forms or blanks, etc., shall be used in such offices excepting those prescribed by the commission."

The commission must accommodate and adapt its forms to the statute. It cannot insist that the operation of the statute be suspended in

order that its idea of forms may be carried into effect. Greene v. Louisville & Interurban R. R. Co., 244 U. S. 499, 512, 514, 37 Sup. Ct. 673, 61 L. Ed. 1280, Ann. Cas. 1917E, 88.

[3] Another question was raised in the court below, and passed upon; that is, that any law of the state, which gave to the holders of bonds a method for their collection less effective than the one they had at the time the bonds were issued, impaired the obligation of a contract. In the case of Crew Levick Co. v. Commonwealth of Pennsylvania, 245 U. S. 292, 294, 38 Sup. Ct. 126, 127 (62 L. Ed. 295), the Supreme Court of the United States said:

"We accept the decision of the state court of last resort, respecting the proper construction of the statute, but are in duty bound to determine the questions raised under the federal Constitution upon our own judgment of the actual operation and effect of the tax, irrespective of the form it bears or how it is characterized by the state courts."

Section 22 of the Irrigation Act of 1905, carried into the Revised Statutes of Colorado of 1908 as section 3461, reads as follows:

"The revenue laws of this state for the assessment, levying and collection of taxes on real estate for county purposes, except as herein modified, shall be applicable for the purposes of this act, including the enforcement of penalties and forfeiture for delinquent taxes."

This section was unchanged at the time of the issuance of the bonds by the East Denver municipal irrigation district and at the time of the purchase of a portion of these bonds by the defendant in error. It contends that these revenue laws are a part of its contract. That section was amended by an act of the Legislature of Colorado approved April 12, 1915 (Laws 1915, p. 315). That act reads as follows:

"Section 1. That section 22 of an act entitled 'An act in relation to irrigation districts,' approved May 3, 1905, the same being general section 3461 of the Revised Statutes of 1908, be, and the same hereby is, amended to read as follows:

" 'Section 22. The revenue laws of this state for the assessment, levying and collection of taxes on real estate for county purposes, except as herein modified, shall be applicable for the purposes of this act, including the enforcement of penalties and forfeiture for delinquent taxes; Provided, that in case of sale of any lot or parcel of land, or any interest therein, for delinquent irrigation district taxes or delinquent irrigation district and general taxes, and there are no bids therefor on any of the days of such tax sale, the same shall be struck off to the irrigation district in which such land is located for the amount of the taxes, interest and costs, thereon, and a certificate of sale shall be made out to said district therefor and delivered to its secretary, who shall file the same in the office of its board of directors and record the same in a book of public record to be kept by said board for such purpose, but no charge shall be made by the county treasurer for making such certificate, and in such case he shall make an entry on his records "struck off to ——— irrigation district" as well as an entry showing the amount of the general irrigation district taxes and interest thereon, respectively for which said lands were offered for sale, together with the cost attending such sale; and no taxes assessed against any land so struck off to said district under the provisions of this section shall be payable until the same shall have been derived by the district from the sale or redemption of such lands; And provided further, that such irrigation district or its assignee shall be entitled to a tax deed for said lands in the same manner and subject to the same equities as if a private purchaser at said tax sale, upon the payment to the county treasurer at the time of demanding said deed of such sum as the board of county commission-

ers of such county at any regular or special meeting may decide; And provided further, that in case the owner of said lot or parcel of land, or interest therein, shall desire to redeem the same at any time before said tax deed shall be issued, the same may be done in the same manner as now or hereafter provided by law to be done, in case said lot or parcel of land, or interest therein, had been purchased by a bidder at said tax sale or had been struck off to the county, and in such case the county treasurer shall forthwith issue a certificate of redemption therefor and notify the district secretary of said fact; who shall thereupon make a suitable transfer entry upon his record aforesaid, and return the certificate of sale to the county treasurer for cancellation; And provided further, that in case any person shall desire to obtain such certificate of purchase so issued to said irrigation district, the same may be done in the same manner as now or hereafter provided by law to be done in case said lot or parcel of land, or interest therein, had been purchased by a bidder at said tax sale or had been struck off to the county, upon payment to the county treasurer of the required amount in cash, or in cash together with warrants not in excess of the district general fund tax, or in cash and interest coupons or bonds not in excess of the irrigation district and redemption fund tax, or in cash and in warrants and bonds, respectively, not in excess of said respective funds. Provided, further, that no action for possession of or to quiet the title to land sold for taxes shall lie on behalf of the owner or claimant of the fee title as against the holder of the tax deed or his grantee, claiming title or color of title thereunder, in any case wherein the taxes or any part thereof for which said land was sold were levied for the maintenance, operating and current expenses of an irrigation district or to pay the interest or principal of the bonds of such district, unless such action be brought within five years after the execution and delivery of the deed by the treasurer and the record thereof, any law to the contrary notwithstanding; Provided, further, that as a condition precedent to the right of such owner or claimant of the fee title to maintain his said suit for possession or to quiet title as against the person in possession under color of title, or as against the claimant of title to vacant and unoccupied land under a tax deed giving color of title to lands in an irrigation district, plaintiff, at the time of filing his complaint, shall pay to the clerk of the court in which such proceedings shall be instituted, for the benefit of, and to be paid to, the person or persons entitled thereto in case the plaintiff prevail in such suit, the amount of all taxes, interest, expenses and penalties, including the amount of subsequent taxes paid on account of such sale which may have been paid thereunder, with interest on the whole of such sum or sums at eight per cent. per annum. In any case in which the claimant has title or color of title to land in an irrigation district under a tax deed duly recorded, and shall bring his suit for possession of or to quiet title to such lands, the invalidity or alleged invalidity or insufficiency of the tax deed shall not be a sufficient defense after the expiration of five years from and after the execution, delivery and record of said tax deed, nor, if such defense is pleaded prior to the expiration of said five years, shall the invalidity or insufficiency of the tax deed be considered by the court as a defense, unless defendant shall first deposit with the clerk of the court in which said suit is brought, a sufficient amount to pay the taxes, interest, expenses and penalties, including the amount of subsequent taxes, and interest at eight per cent. per annum, paid on account of such tax sale, for the benefit of and to be paid to the person or persons entitled thereto, when ascertained by the judgment in said suit.'

"Sec. 2. All acts and parts of acts inconsistent herewith are hereby repealed.

"Sec. 3. In the opinion of the General Assembly an emergency. exists in regard to the matters provided for in this bill, and therefore this act shall take effect and be in force from and after its passage." .

Defendant in error contends that the act of 1915 materially changes its contract with the district to its injury. We agree with the following statement and conclusions in the opinion of Judge Lewis, who tried the case:

"The revenue laws of the state pertinent to the present inquiry made it the duty of the county assessor to deliver annually to the county treasurer the tax list and warrant under his hand and official seal, setting forth the assessment roll with the taxes extended, containing in tabular form and alphabetical order the names of the persons and bodies in whose names the property had been listed in his county, with the several species of property and the value, and the total amount of taxes, and with the column of numbers and value footed, and commanding the treasurer to collect the said taxes (Rev. Stat. Colo. 1908, § 5666) ; it was the duty of the treasurer, on receiving the tax list and warrant, to collect the taxes levied, the list and warrant being his authority and justification, and he was required, upon the last day of each month, to pro rate the total amount of the taxes during the month to the several funds (section 5672): no personal demand of taxes was necessary but it was the duty of every person subject to taxation to attend at the office of the treasurer and pay the first half of the taxes assessed against his property on or before the last day of February, and the remaining one-half part on or before the last day of July of the year following the one in which they were assessed (section 5675): the county treasurer was required to make public sale of those lands on which taxes should become delinquent, and if there were no bidders for any of the tracts offered it was his duty to strike the same off to the county and to issue to the county a certificate of purchase therefor (section 5713) ; he was required to keep a correct record of all sales of real estate for taxes in a book kept by him for that purpose, and in it put down the total amount of taxes, interest, penalties and costs at the time of sale, with other data, and to file a copy thereof with the county clerk (section 5719) ; if there were a bidder at the tax sale to the amount of the taxes and costs against the tract the same was to be struck off to him and a certificate of purchase issued to the bidder (section 5723), and on the expiration of three years from the date of the sale of the person holding the certificate of purchase would be entitled to a deed to the particular tract from the treasurer. The certificates of sale issued to the county were assignable by the treasurer to any one who would pay to the treasurer the taxes, with interest and penalties against the land bid in by the county, and the subsequent taxes assessed against that particular tract, but the amount of taxes subsequently assessed might be adjusted by the board of county commissioners for a less sum (section 5726). The owner of any real property sold for taxes was given the right to redeem the same at any time before the expiration of three years from the date of sale, or before the execution of the treasurer's deed to the purchaser, by payment to the county treasurer of the amount for which the same was sold, with interest thereon from the date of sale at a specified rate, together with the amount of all taxes accruing on the real estate after the sale, paid by the purchaser, with interest thereon, and the county treasurer was thereupon required to issue a certificate of redemption and hold the fund so paid in for the purchaser (sections 5734 and 5736).

"From these statutory provisions it is clear that when the district issued its bonds the principal and accruing interest were to be paid by annual tax levies on the lands in the district, that the levy for that purpose was to be made by the county commissioners, that the county assessor was required to include that levy against each tract on the roll which he made up, with state and county taxes assessed against the same, and to turn over that roll, with his certificate to the same, to the treasurer, which would be the treasurer's warrant for the collection of all taxes against the tract, that it was the duty of the taxpayer owning the tract to pay, and of the treasurer to receive, one-half of the total tax so assessed against the tract upon the roll, on or before the last of February, and the other half on or before the last of July succeeding the levy, that it was the duty of the treasurer, on the last day of each month, to apportion to the several funds the taxes so collected during that month, that in event the taxes so assessed against any one tract became delinquent it was the duty of the treasurer to make sale of the tract for all of the delinquent taxes so appearing upon the assessment roll against the tract and to issue a certificate of purchase to any one who bid the amount of

taxes and costs; and on which a deed might later issue under the conditions named. The statute thus clearly set forth the remedy which the law gave to the holder of the bonds for their collection and became a part of the contract between him and the district. The taxes which were to be levied and paid for his benefit were coupled with and put on the same footing as county taxes. Nile District v. English, 60 Colo. 406, 409 [153 Pac. 760]. The assurance was held out that the taxpayer could not pay one and let the other become delinquent. All of the taxes appearing upon the assessment roll were made a demand and charge against his property en masse. He was required to pay all of it without distinction, half at one time and half at another, and his failure to do so rendered the entire assessment delinquent and subjected his property to the one sale for all taxes assessed against it.

"A levy has been made by the county commissioners to pay in part the petitioner's judgment; but the county assessor and county treasurer have refused to make the assessment and collection of the tax so levied in the way and in the manner above set out. The assessor proposes to make up, if he has not already made up, a separate roll and assessment for the taxes levied to pay the judgment, and certify that separate roll to the treasurer as his warrant. And the treasurer proposes to receive and accept that roll as his proper warrant, and to make a separate collection of county and all other taxes from the taxes so levied to pay the judgment, and in event the taxpayers fail to pay the district taxes so levied, to make separate sales of lands for those taxes from sales that he may make for other unpaid taxes against the same tract. Indeed, this has been the practice of those two officers for the past several years in the levy and collection of taxes to pay interest coupons not in judgment.

"This is a proceeding in mandamus to compel the assessor and treasurer to make assessment and collection in accordance with the revenue laws above set out. Their attempted justification is two-fold. By Legislative Act of 1911 the state tax commission, composed of three members, was created. It gave the commission power (section 13), among other things, 'to prescribe a uniform system of procedure in the assessors' office and the form and size of all tax schedules, tax rolls and warrants, field books, plat and block books and maps, and all other notices and forms furnished to taxpayers, and all blanks, books and records used in the offices of the county assessors, and no other system, forms or blanks, etc., shall be used in such offices excepting those prescribed by the commission.' The state tax commission has heretofore directed the assessor to make up a separate assessment roll for district irrigation taxes, and has furnished the assessor blanks for that purpose, and has ordered the assessor to use those blanks for the purpose of assessment to be made under the levy for the payment of petitioner's judgment. And the state Legislature, at the 1915 session, passed an act amendatory of the District Irrigation Act of 1905, providing for sale for delinquent irrigation district taxes only, and in event of no bid at the sale the act provides that the land is to be struck off to the irrigation district instead of to the county, without the district being a bidder at the tax sale, and that the certificate of sale is to be issued by the county treasurer to the district. It also gives the district or its assignee of the certificate of purchase the right to a tax deed for the land so sold for irrigation district taxes on the expiration of three years, 'upon the payment to the county treasurer at the time of demanding such deed of such sum as the board of county commissioners of such county at any regular or special meeting may decide.'

"These legislative acts and the practice under them give the holders of bonds a different remedy for their collection from the one which they had at the time the bonds were issued. The material difference is this, formerly all taxes, state, county, school and district, had to be paid or none, now the taxpayer may let the district taxes become delinquent but pay all other taxes; formerly there was one tax sale for all delinquent taxes, now there may be two, one for district and one for all other taxes; formerly one tax sale certificate of purchase was issued for all delinquent taxes, now there may be two, and if to different persons, each is entitled to a deed on failure to redeem, —and if each gets a deed, which has the title? These changes, it seems to

me, affect substantial rights of the bondholders. Their present remedy is not as adequate and efficient as was their prior remedy. The mode of procedure now adopted is a discrimination against district taxes by which they are put on a lower level than other taxes. Under the prior remedy there was compulsion on the taxpayer to pay all or none, and with it the patriotic impulse to promptly meet all just obligations to sustain schools, and state and county governments. Of course, the Legislature was not without power to change the remedy, but in doing so it was obliged to give the bondholder some other equally adequate remedy, otherwise it would impair the obligation of his contract with the district. Von Hoffman v. Quincy, 4 Wall. 535 [18 L. Ed. 403]; Walker v. Whitehead, 16 Wall. 314 [21 L. Ed. 357]; Tennessee v. Sneed, 96 U. S. 69 [24 L. Ed. 610]; Railroad v. New Orleans, 157 U. S. 219 [15 Sup. Ct. 581, 39 L. Ed. 679]; Seibert v. Lewis, 122 U. S. 284 [7 Sup. Ct. 1190, 30 L. Ed. 1161]."

We think that the orders complained of were right and that the judgment should be affirmed.

It is so ordered.