State, *ex rel.,* A. C. Mittendorf, *et al.,* v. Ellen Hoy, Tax Collector.

151 So. 1.
Division B.
Opinion Filed October 31, 1933.

*L'Angle & Shands, F. P. Fleming* and *J. M. Bryant,* for Relators;

*Fred R. Wilson,* for Respondent.

BUFORD, J.—In this case alternative writ of mandamus was directed to the respondent, commanding her as Tax Collector of the City of Sanford, Florida, to sell, transfer and assign to the relators a certain tax certificate, No. 61 of the 1932 tax sale of the City of Sanford, Florida, upon the payment by relators to her at or prior to the time of such sale, transfer or assignment, the amount of money required by law to be paid for the purchase of said tax certificate, together with subsequent unpaid taxes and interest and penalties thereon and her fees as Tax Collector of the said City of Sanford, and commanding that she thereupon endorse and sign said tax certificate to the relators, or that she show cause, etc., etc.

Respondents filed motion to quash the alternative writ.

If the relator is shown to be one who may question the constitutionality of the legislative Act, alternative writ and motion to quash present as the controlling issue to be determined by this Court the question of whether or not the provisions of House Bill No. 1301, entitled: "AN ACT TO

Fix the Powers of the Governing Authority of the City of Sanford, Seminole County, Florida, in Connection with the Sale or Foreclosure of All Tax Certificates and Tax Liens Which Are Now Held by Said City or Which May Be Hereafter Held by It for a Period of Five Years," conflict with the Constitution of the State of Florida, and are, therefore, invalid.

Questions involving some of the same principles of law and determinable upon the application of such principles were presented in the cases of State, *ex rel.*, Hester Dowling, by John Dowling, her husband and next friend, v. Butts, as Clerk of the Circuit Court of Duval County, and State, *ex rel.*, Smith v. Butts as Clerk of the Circuit Court of Duval County, in which opinions were filed August 3, 1933. In the opinion in those cases we said:

"While the legislative power cannot legally be utilized to violate organic rights that may exist in the disposition of tax sale certificates held by the State, nor as a means of simply favoring delinquent taxpayers to the prejudice of others who are not delinquent, yet, the Legislature has power to enact laws making reasonable and appropriate concessions to encourage the redemption of forfeited land from tax sales, thereby acquiring some value for certificates representing uncollectible or long delinquent taxes, and restoring the lands to the tax roll for current and future assessments, and to regulate the use and disposition of taxable resources and assets for the benefit of interested taxing units. And such legislative power should be considered and given appropriate effect in adjudicating the rights of taxing units and of those who have an interest as owner-taxpayer or as public creditor or otherwise in the making of tax levies and in the disposition of depreciated tax sale certificates which may be non-productive assets

derived through tax assessments for State, county and district ad valorem taxation.

"The organic requirements that the Legislature shall provide for a uniform and equal rate of ad valorem taxation upon just valuations of all taxable property and that all property shall be taxed upon the principles established for State taxation, do not forbid the enactment and enforcement of statutes designed to facilitate the adjustment of settlement of delinquent taxes through reasonable additional extensions, reductions and privileges, to encourage or facilitate the redemption of lands covered by tax sale certificates held by the State *after* the initial redemption period of two years has expired, such privileges of redemption being extended to owners of the property upon condition that current and future taxes on the same land shall be assessed and duly paid; or to make reasonable disposition for some appropriate consideration of tax sale certificates held by the State *after* the initial period of redemption has expired, when such certificates may be regarded by the Legislature as being depreciated in their revenue value and may not be redeemed or sold except at a discount, where such statutes are appropriate to conserve the interests of the taxing units that have rights in the unpaid taxes represented by the tax sale certificates, and the statutory provisions accord with the principles established by law for State taxation, and are in furtherance of a proper State policy. Such statutes may not violate the organic requirements of uniform and equal ad valorem taxation or the organic principles expressed in the requirements of due process and of equal protection of the laws. See Cooley on Taxation (4th Ed.), Sections 259, 264; Ide v. Finneran, 29 Kan. 569; Lincoln Mortgage & Trust Co. v. Davis, 76 Kan. 639, 92 Pac. Rep. 707; Ridgeway v. Peacock, 100 Fla.

1297, 131 So. 140; Ridgeway v. Reese, 100 Fla. 1304, 131 So. 136; Ranger Realty Co. v. Miller, 102 Fla. 378, 136 So. 546; 11 C. J. 123." * * *.

"Constitutional interpretation of the provisions of Sections 6 and 7 of Chapter 16252, requires that such provisions be limited to tax sale certificates issued for unpaid taxes assessed for the year 1931 and prior years and held by the State *after* the initial redemption period of two years from the date of the tax sale certificate. The requirements of uniformity and equality of taxation are that taxes be paid in money including tax collections *eo nomine* and also receipts from sales or redemption of tax sale certificates within the initial two-year period allowed for redemptions." * * *.

"The classifications predicated upon the substantial differences shown between rights as to tax sale certificates held by the State before the initial two-year redemption period has expired and rights in such certificates that are held by the State after the two-year redemption period, have a practical basis legally sufficient to insure equal protection of the laws to all who may be justiciably interested in the disposition of such tax sale certificates." * * *.

"It cannot be well denied that, when the proper tax officers have legally placed upon each individual his share of the public burden of taxation, the Legislature of the State has no right to lift it from him to the prejudice of other taxpayers, or to the detriment of the public credit, either in the form of an abatement before, or in the form of a gift after, collection, or by a return to the taxpayer unburdened his forfeited property, for this being done, a deficiency results in the public revenues, which must be supplied by the imposition of additional tax assessments and levies upon the non-favored class, thereby violating the funda-

mental constitutional requirement of all taxation, which is that it shall bear equally upon all, with special privileges to none. Simpson v. Warren, 106 Fla. 688, 143 Sou. Rep. 602; Ranger Realty Co. v. Miller, 102 Fla. 378, 136 Sou. Rep. 546; St. Lucie Estates v. Ashley, 105 Fla. 534, 141 Sou. Rep. 738; State, *ex rel.,* Coe v. Fyler, 48 Conn. 145; State v. Armstrong, 17 Utah 166, 53 Pac. Rep. 981.

"It is likewise true that delinquent taxes, and the lands of delinquent taxpayers forfeited therefor, constitute a State fund, of which the State is trustee for the benefit of its creditors and its non-delinquent taxpayers, and that it is no more competent for the Legislature to unconditionally dissipate or divert this trust fund to the prejudice of the State, its creditors and its other taxpayers, than it would be competent for the Legislature in express terms to have exempted the forfeited lands from taxation in the first instance, or to now make an appropriation from funds raised from other taxpayers, with which to pay off the taxes accumulated on the forfeited properties of those delinquent (Gibbs v. Green, 54 Miss. 592), in order that such properties might be unburdened and returned to the original owners, freed of the burdens originally required by law to be imposed upon them for the support and protection of the government, and the payment of the public debt." * * *.

"The rule is universal that the practical operation, not the form of a statute, is the criterion by which to judge its constitutionality, when the validity of the Act is judicially brought in question. St. Louis S. W. R. Co. v. Arkansas, *ex rel.,* Norwood, 235 U. S. 350, 35 Sup. Ct. 99, 59 L. Ed. 265; Kansas City, Ft. S. & M. R. Co. v. Botkin, 240 U. S. 227, 36 Sup. Ct. 261, 60 L. Ed. 617; Panhandle Oil Co. v. Mississippi, *ex rel.,* Knox, 277 U. S. 218, 48 Sup.

Ct. 451, 72 L. Ed. 857; American Mfg. Co. v. St. Louis; 250 U. S. 459, 39 Sup. Ct. 522, 63 L. Ed. 1084; Wagner v. Covington, 251 U. S. 95, 40 Sup. Ct. 93, 64 L. Ed. 157; Bailey v. Drexel Furn. Co., 259 U. S. 20, 42 Sup. Ct. 449; 66 L. Ed. 817; McCray v. United States, 195 U. S. 27, 24 Sup. Ct. 769, 49 L. Ed. 78; Hill v. Wallace, 259 U. S. 44, 42 Sup. Ct. 453, 66 L. Ed. 822."

The provisions of the legislative Act here under consideration differ materially from the provisions of the Futch Bill. The enunciations above quoted, however, constitute sufficient authority for our now holding that the Relator, being a public creditor, may have such an interest in the subject matter of the litgation as to give him the right to question the constitutionality of the Act which he alleges intervenes to deprive him of a part of the fund to which he is entitled to look for payment of his past due obligation of the municipality.

The Act following the title above quoted is as follows:

"BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF FLORIDA:

"SECTION 1. That the governing authority of the City of Sanford, Florida, be and it is hereby required for a period of five (5) years from the time that this Act becomes a law to withhold sale of and foreclosure proceedings on all tax certificates and other liens for delinquent taxes which are now held by said City, or which may hereafter be held by it during the next five (5) years.

"SECTION 2. This Act shall take effect upon its becoming a law."

The Act possesses none of the saving graces attributed by us to the Futch Bill. It is a clear attempt on the part of the Legislature to suspend for a period of five years the enforcement of the payment of taxes which may become

delinquent on real estate within the jurisdiction of the City where the lands assessed have heretofore or may hereafter be during that period sold at tax sale and certificates thereon issued to the Municipality.

The practical effect of this is that if the tax sale certificate has been issued, or shall hereafter be issued within the period of five years, to the City of Sanford, the property embraced in that certificate cannot be required to contribute its proportion of the tax burden as represented by the amount of the certificate to the obligation of the Municipality and that such proportion of the tax burden must be transferred to be borne by other property on which taxes are paid, and this without any of the compensatory provisions which are included in the Futch Bill.

The particular certificate, the sale of which is here sought to be coerced, is one issued at the tax sale on the 4th of July, 1932, for the unpaid taxes for the year 1931. The relator is a judgment creditor and the petition shows that on the 22nd day of October, 1931, the City Commission of the City of Sanford appropriated for the payment of interest on relator's obligation 55.7355 per cent. of all revenues received by the City during its fiscal year commencing October 1, 1931, and ending September 30, 1932, except revenues derived from the operation of the water plant, ratably and proportionately, for the several items of expenditures authorized and appropriated for the judgments held by the relator and other items of debt service and all collections of, or on account of, delinquent taxes in excess of $6,000.00. That on the same date the said City Commission enacted an ordinance levying taxes for the year 1931, and, for the purpose of paying in part said appropriations of interest items on said judgment of the relators and other items of debt service, there was levied a tax of

16.72065 mills. That of the taxes so levied by the City for the year 1931 approximately 40% thereof was not paid before becoming delinquent and thereafter the City officials, in due course, sold the lands upon which taxes were so delinquent in the manner provided by law and did issue tax certificates therefor. That the particular certificate herein so involved is one of the certificates issued.

It is well settled that the law affecting the enforcement as well as the authority and ability to perform the contract becomes a vital part of the contract and so neither the authority nor the ability to perform the contract may be impaired during the continuance of the contract. The degree of impairment is not material. United States, *ex rel.*, Van Hoffman v. Quincy, 4 Wall. 535, 18 Law Ed. 403; Sturges v. Crowninshield, 4 Wheat 122; Green v. Biddle, 8 Wheat 84; Phinney v. Phinney, 81 Me. 450, 17 Atl. 405, 4 L. R. A. 348; Edwards v. Kearzey, 96 U. S. 600, 24 Law Ed. 796; Moore v. Gas Securities Co., 278 Fed. 111, Currian v. State of Arkansas, 15 How. (U. S.) 304; Austin v. Cahill, 99 Tex. 172, 88 S. W. 542; Walker v. Whitehead, 16 Wall. 314, 21 Law Ed. 357; Hull v. State *ex rel.* Rollins, 29 Fla. 79, 11 So. 97. See also opinion in Humphreys v. State, filed January 17, 1933, reported 145 Sou. 858.

In the passage of the Act under consideration the Legislature has attempted to make ineffective provisions of the law which were in effect at the time obligation accrued and were available as a valid means for the producing of money to augment the fund from which Relator's obligation must be paid.

The Act clearly aims to suspend a part of the enforcement of the collection of taxes without any compensatory

features to affect the loss which it will inflict upon the Relator.

Motion to quash should be denied and, Respondent failing to answer or otherwise plead further within ten days from the date of filing hereof, peremptory writ should issue. It is so ordered.

DAVIS, C. J., and WHITFIELD, TERRELL and BUFORD, J. J., concur.