ROBERTS, Justice.
We here review on direct appeal, as authorized by Sec. 4, revised Article V, Fla. Const., F.S.A., a final decree entered in statutory bond validation proceedings instituted by the Jacksonville Port Authority, appellant here, (“the Port Authority” hereafter) in the Circuit Court of Duval County, Florida. The decree here reviewed held that the revenue bonds proposed to be issued by the Port Authority were not en *826 titled to validation. We do not agree for the reasons hereafter stated.
The instant litigation had its inception in 1912 when the Legislature authorized the City of Jacksonville to issue $1,500,000.-00 of general obligation bonds for the purpose of acquiring or constructing dock and terminal facilities on the St. Johns River. Ch. 6415, Laws of Florida, Special Session of 1912. Pursuant to such statutory authority the City of Jacksonville (“the City” hereafter) issued in 1913 its so-called Dock and Terminal Bonds in the authorized amount, pledging for their repayment the general taxing power of the City, as well as all property acquired with the proceeds of such bonds and the “net proceeds” thereof. It appears that the term “net proceeds” as used in the 1912 Act meant “[a]ll amounts which shall be derived from the use and occupation of said property, including such amounts as may be derived from leases thereof, * * * after the payment of all necessary expenses of and in connection with the maintenance, operation, renewals and extension thereof, and of said Port Commissioners * *
In 1941 the City refunded its entire bonded indebtedness, including a balance of $1,325,000.00 still remaining due on the Dock and Terminal Bonds issued in 1913. The Resolution authorizing the City to issue such refunding bonds provided specifically for the exchange of the 1941 Refunding Bonds numbered 1106 to 2430, inclusive, for the 1913 bonds and specified that the 1941 Refunding Bonds, so numbered and exchanged, should be subrogated to the pledge of the City’s dock and terminal facilities, and the net proceeds thereof, as provided by the 1912 Act, supra, for the payment of the 1913 Dock and Terminal Bonds. The entire 1941 Refunding Bond issue, including the bonds specifically numbered and exchanged for the 1913 Dock and Terminal Bonds, had pledged for their payment the general taxing power of the City and the entire net revenues of the City’s electric light plant. As in the case of the 1913 issue, the City was directed to levy annually a special tax on all the taxable property in the City sufficient to service the principal and interest on the 1941 Refunding Bonds. The 1941 Refunding Bonds were duly validated in a statutory bond validation proceeding and are conceded to be general obligation bonds of the City.
This brings us, then, to the year 1963, when the Legislature enacted Ch. 63-1447, Laws of Florida, creating the Jacksonville Port Authority as a separate public entity to take over the ownership, management and control of all port and harbor facilities in Duval County, including the City’s dock and terminal facilities. The 1963 Act directed the City to transfer to the Port Authority all of such facilities and to accept in payment therefor the Port Authority’s Revenue Bonds in the amount of $1,540,-000.00, after they had been judicially validated. The Port Authority was authorized to issue such revenue bonds and was directed to obtain a decree of the Circuit Court of Duval County, duly validating such bonds. It was the attempt of the Port Authority to obtain such a decree that culminated in the decree referred to above and which we here review on direct appeal.
The validation of the 1963 Revenue Bonds proposed to be issued by the Port Authority (“the 1963 bonds” hereafter) was resisted by the State through its State Attorney for the Fourth Judicial Circuit on the grounds, inter alia, that the 1963 Act, Ch. 63-1447, supra, impaired the obligation of the contract of the City with the holders of the outstanding 1941 Refunding Bonds numbered 1106-2430 (the ones exchanged for the 1913 bonds, which will be hereafter referred to as “the 1941-1913 exchanged bonds”), in violation of Section 10 of Article 1 of the Federal Constitution. The basis for the State’s claim in this respect, as made in the lower court and reiterated here, is that the 1941-1913 exchanged bonds had pledged for their payment the City’s dock and terminal facilities and the net proceeds thereof, so that the transfer of such facilities to the Port Authority would divert a source of revenue *827 from the payment of such bonds and would, therefore, tend to impair the obligation of the City’s contract with the holders of such bonds. This contention was sustained by the trial judge and was the sole ground for his decree declining to validate the 1963 Revenue Bonds proposed to be issued by the Port Authority.
Considerable testimony was adduced in the bond validation proceedings. This evidence, which is not disputed, showed that the City had never used the revenues from the dock and terminal facilities to pay the principal or interest on the 1913 bonds or the 1941 Refunding Bonds exchanged therefor, except a small sum several years ago to pay a part of the interest due thereon. Instead, the City had devoted the revenues therefrom, over and above operating and routine expenses, to extensions and improvements of the facilities, as authorized by the 1912 Act; and the principal and interest on such bonds had been routinely paid out of the general revenue fund of the City. It was also shown that the general revenue fund of the City will be ample to service the principal and interest on all the City’s outstanding indebtedness, including the balance due on the 1941-1913 exchanged bonds (which, at the time of the hearing in the lower court, amounted to $770,000.00), and that an amount sufficient to make the next payment on the 1941-1913 exchanged bonds has already been budgeted by the City. It was also shown, however, that the 1963 Revenue Bonds, if issued, will in fact be applied to the payment of the 1941-1913 exchanged bonds until such bonds are paid off in full, and that the bond-payment schedule on the 1963 bonds for the next several years is only slightly less than the average net operating revenues of the dock and terminal facilities for the last three years.
 It can thus be seen that, for all practical purposes, the holders of the outstanding 1941-1913 exchanged bonds have not been affected by the transfer of the property out of the City and into the bands of the Port Authority, and the substitution therefor of the Revenue Bonds of the Port Authority. The 1963 Act was not intended to and does not purport to relieve the City from its liability for the payment of the 1941-1913 exchanged bonds; and, indeed, such an attempt would have been futile. It is clear, under well settled principles of law, that even though the City divests itself of the title to the property for the acquisition of which the 1941-1913 exchanged bonds were issued, the City cannot legally be relieved of its liability for the payment of its obligation under such bonds, any more than a mortgage debtor can relieve himself of liability for the debt by transferring the mortgaged property. See Folks v. Marion County, 1935, 121 Fla. 27, 163 So. 298, 306, 102 A.L.R. 659, citing Drake Lumber Co. v. Semple, 100 Fla. 1757, 130 So. 577, 75 A.L.R. 687; City of Fort Lauderdale v. State ex rel. Elston Bank & Trust Co., 1936, 125 Fla. 89, 169 So. 584.
Moreover, the fact that the City will no longer receive the “net proceeds” of the dock and terminal facilities, as such, but will instead receive the equivalent thereof through the payments on the 1963 Revenue Bonds of the Port Authority, should be of academic interest, only, to the holders of the 1941-1913 exchanged bonds. As noted above, the City was not devoting such “net proceeds” to the servicing of their bonds, anyway; and so long as the City was not in default in the payment on such bonds the bondholders could not have compelled the City to do so. The right of a bondholder is to have his principal and interest paid when due; and it should be of little interest to him from what fund his obligation is currently being paid so long as he is being paid from some source sufficient to discharge what is his due. See Metropolitan Water District v. Toll (1934), 1 Cal.2d 421, 35 P.2d 519; and City of Fort Lauderdale v. State ex rel. Elston Bank & Trust Co., supra, 169 So. 584, 587. As noted above, it is undisputed that the City’s general revenue fund will be ample to service the 1941-1913 exchanged bonds as they *828 come due, as they have been in the past. And since the payments on the 1963 Revenue Bonds will he "earmarked” for the payment of the outstanding 1941-1913 exchanged bonds until such bonds are paid, it might even be said that the holders of the 1941-1913 exchanged bonds will stand in a better position than before, if such 1963 Revenue Bonds are issued and validated.
“The rule is universal that the practical operation, not the form of a statute, is the criterion by which to judge its constitutionality, when the validity of the act is judicially brought in question.” State ex rel. Mittendorf v. Hoy, 1933, 112 Fla. 526, 151 So. 1, and cases cited. And we hold that the 1963 Act in question, in its practical operation, cannot and will not affect deleteriously the obligation of the City to the holders of its outstanding 1941-1913 exchanged bonds, so that such Act is not vio-lative of the contract clause of the Federal Constitution, Section 10 of Article 1. The primary obligation of the City to pay such bonds, and the pledge of its general taxing power to do so, remain unaffected by the 1963 Act. Cf. Shavers v. Duval County, Fla.1954, 73 So.2d 684.
It must be held, therefore, that the trial judge erred in holding that the 1963 Revenue Bonds of the Port Authority were not entitled to validation.
Two other points have been cross-assigned as error here by the State and arguments with respect thereto have been made by the parties. Neither of these points goes to the validity of the 1963 Revenue Bond issue, and it is not necessary to decide them in disposing of the question of whether such bonds are entitled to be judicially validated. Accordingly, for reasons not necessary to relate, we will defer the answer to such questions until such time as they are presented in more appropriate proceedings.
In the event of default, we hold that the original bondholders have every right available to them prior to the passage of the 1963 Act.
For the reasons stated, the decree here reviewed should be and it is hereby reversed, and the cause remanded for the entry of a decree in accordance with the opinions herein expressed, validating the bonds.
It is so ordered.
DREW, C. J., and THORNAL, O’CON-NELL, CALDWELL and ERVIN, JJ.„ concur.
THOMAS, J., dissents with opinion..