## LOGAN CITY v. ALLEN et al.

No. 5530.   Decided May 9, 1935.   (44 P. [2d] 1085.)

*Leon Fonnesbeck,* of Logan, for appellant.

*Joseph Chez,* Atty. Gen., *Budge & Parker,* of Salt Lake City, and *Newell G. Daines,* of Logan, for respondents.

FOLLAND, Justice.

By its complaint the plaintiff Logan City seeks personal judgment against three groups of persons, in different sums, on account of taxes levied and assessed against the property of the William Budge Memorial Hospital in Logan City, for the years 1929, 1930, and 1931, having been reduced in amount by the board of county commissioners of Cache county and the State Tax Commission. The defendants are respectively members of the board of county commissioners of Cache county, members of the State Tax Commission, and bondsmen in certain suits commenced by the hospital corporation against the treasurer of Cache county wherein sale

for delinquent taxes of the hospital property was enjoined for the years 1929 and 1930. From a judgment of dismissal, after sustaining the several demurrers of defendants to the complaint, plaintiff appeals and assigns errors.

The hospital property was assessed and taxes levied for the years 1929, 1930, and 1931. A suit was then pending in the courts involving the question of whether the levy and assessment of taxes against the same hospital property for the year 1928 was valid, it being claimed by the hospital corporation that it was a charitable institution and that its property was exempt from taxation. This suit was determined adversely to the hospital's contention by a decision of the Supreme Court in October of 1931. *William Budge Memorial Hospital* v. *Maughan*, 79 Utah 516, 3 P. (2d) 258, 13 P (2d) 1119. Similar separate suits were commenced in the district court of Cache county to determine the validity of the tax for the years 1929 and 1930, and in each of such suits temporary injunctions were issued restraining the county treasurer from selling the property or collecting the tax. In each case a bond in the sum of $2,500 was executed and filed as a basis for the injunction; the bondsmen in one case being the defendants D. C. Budge and J. W. Hayward, and in the other case the defendants D. C. Budge and T. B. Budge. The tax was levied and assessed against the hospital property for the year 1931. There is no allegation of any suit filed or injunction issued to restrain the sale of the property for the tax of that year. The complaint, however, alleges that no sale was made of the property or any part thereof for delinquent taxes for either of the years 1929, 1930, or 1931. In January of 1928 the stockholders of the William Budge Memorial Hospital, at a meeting held January 31st, amended the articles of incorporation in an attempt to classify the hospital corporation as a charitable organization. This court, in the case referred to, had expressly declined to pass on the legal effect of this amendment because the 1928 tax had attached before the adoption of the amendment. After the decision of this court became

final, the hospital corporation dismissed its two cases pending in the district court, thereby releasing the restraining orders theretofore issued. It then made an offer to the board of county commissioners of Cache county to settle its delinquent taxes for the years 1929, 1930, and 1931 on the basis of the assessed value of its property as assessed for the 1932 tax. This offer was accepted by the board of county commissioners and by such board referred to the State Tax Commission for approval. The State Tax Commission, after giving full consideration to the matter, wrote a decision affirming such settlement. It based its decision on the fact that the question of the legal effect of the amendment to the articles of incorporation had not been definitely decided by the courts, and while holding to the view that the amendment gave the corporation the character of a charitable organization, recognized that the question was not free from doubt and would require further litigation to settle the controversy. The commission concluded that it would be for the best interest of the state and county to approve the offer and accept payment of the taxes without interest, penalties, or costs on the basis proposed. The corporation then paid all of its delinquent taxes as reduced and received the treasurer's receipt therefor. The taxes thus compromised and paid included not only state and county taxes, but the taxes levied by Logan City which amounted to 37.37 per cent of the whole. By such settlement Logan City alleges it has been deprived of payment of its proportion of the difference between the total amount of taxes, interest, costs, and penalties, and the sum for which settlement was made. This suit is for such balance. Logan City refused to recognize the compromise settlement as valid.

This action is two fold. Judgment is sought against D. C. Budge, T. B. Budge, and J. W. Hayward as sureties on the bonds in the injunction suits on the theory that such bondsmen guaranteed payment of the taxes in the event of dismissal of the case or a final judgment upholding the tax as valid. This cause of action is based on the contract obliga-

tion of such defendants. The defendants L. H. Allen, W. W. Hall, and Thomas Muir were county commissioners of Cache county at the time settlement was made. George A. Critchlow, H. P. Leatham, and R. E. Hammond were members of the State Tax Commission at the time. The action proceeds against the county and state officials on the theory they had wrongfully and unlawfully compromised and settled the taxes levied against the hospital property.

We first consider the demurrer of the defendants Budge, Hayward, and Budge, bondsmen in the injunction suits. The demurrer was properly sustained because it is not made to appear by any allegations of the complaint that any loss suffered by plaintiff was caused by or was the result of the issuance and pendency of the restraining orders. These bondsmen did not "guarantee payment of the tax" as argued by appellant, but merely agreed "to pay all damages not exceeding said sum of $2,500 which the County Treasurer, as collector of taxes, may sustain by reason of said restraining order." The restraining orders prevented the county treasurer from making sale of the property for the taxes of 1929 and 1930 until after dismissal of such action and discharge of the restraining orders. The delay was not the cause of any damage or loss to Logan City. The county treasurer had not been deprived of authority to proceed and collect the full amount of the tax, penalties, accrued interest, and costs. It is not suggested, and we do not see how it well could be, that by reason of such delay the county treasurer had lost his power to enforce collection of the delinquent tax. Neither is it alleged that the taxed property had in the interim become of less value than the total amount of taxes, interest, penalties, and costs. On the other hand, the complaint sets forth the reason why the full amount of these tax claims was not paid; that is, the board of county commissioners, with the approval of the State Tax Commission, compromised the claim and accepted as full payment a sum less than the total amount. It is unnecessary to pass on the objections that there was a misjoinder of parties

defendant, and that plaintiff had no legal capacity to sue because not an obligee on the bonds.

The demurrers of the other defendants, filed separately for the members of the county board and for members of the state board, rest on the same grounds. Appellant contends the board and commission were without authority to make any reduction in the tax levied for the years mentioned, and that the action of such officers being in excess of authority, and Logan City having suffered loss by reason of such unlawful action, it may recover a personal judgment for the amount of such loss against the individual officers. The defendants assert that the board and commission acted within statutory authority; that the power and authority conferred on them by law is in character discretionary and quasi judicial; that their action being within discretion, even if erroneous, it imposed no personal liability unless actuated by bad faith, fraud, or collusion; that the complaint, failing to charge bad faith, collusion, or fraud, does not state a cause of action.

The general rule is well stated in 46 C. J. 1043, where, referring to the immunity of judges to civil liability for acts within the limits of their jurisdicton, it is said the rule also applies "to officers exercising quasi-judicial powers, whose discharge involves the exercise of judgment ■ and discretion," and that such officers are not liable for error or mistake of judgment in the exercise thereof in the absence of corrupt or malicious motives. The rule is stated in 22 R. C. L. 485, as follows:

"Where an officer is invested with discretion and is empowered to exercise his judgment in matters brought before him he is sometimes called a quasi judicial officer, and when so acting he is usually given immunity from liability to persons who may be injured as the result of an erroneous decision, provided the acts complained of are done within the scope of the officer's authority, and without wilfulness, malice, or corruption. This immunity from civil liability for a mistake in judgment extends to errors in the determination both of law, and of fact."

The doctrine thus announced has been followed by this court in the case of *Salt Lake County* v. *Clinton*, 39 Utah 462, 117 P. 1075, 1078, wherein it was said:

"It is a well-settled rule of law that quasi judicial officers cannot be held personally liable for errors or mistakes while honestly exercising, within their jurisdiction, the judicial or quasi judicial functions of their offices, however erroneous or misguided their judgment may be."

In the recent case of *Board of Education* v. *Jeppson*, 74 Utah 576, 280 P. 1065, 1069, the court said:

"An officer performing a quasi judicial duty is not liable for an honest mistake of judgment."

In the last-mentioned case the court defined what are "judicial or quasi judicial duties," as distinguished from "ministerial duties" as follows:

"A ministerial duty of an officer is a duty that is prescribed by law in a manner that leaves no discretion to the officer performing the same. A judicial or quasi judicial duty is one that requires the exercise of judgment, or requires choice of alternatives in its performance."

Where the same officer is charged with the performance of judicial as well as ministerial duties, the judicial privilege will not protect him in the exercise of ministerial functions. 22 R. C. L. 484. Such officers may become civilly liable where they act in excess of authority or where there is a total want of jurisdiction, 22 R. C. L. 479 and 486. As a general rule the taxing officers of the state, county, or a municipal corporation may not compromise or release claims for taxes legally assessed unless empowered so to do by statute. 61 C. J. 973.

The important question for decision is whether the board of county commissioners and the State Tax Commission had authority to effect a settlement or compromise with the hospital corporation and accept less than the total amount of tax, interest, penalties, and costs for the years 1929, 1930, and 1931. By chapter 53, Laws of

Utah 1931, the State Tax Commission is given broad powers of supervision over the local officers in the levy and collection of taxes within the state. In Laws of Utah 1931, c. 53, § 5984, subd. 8, p. 229, the commission is vested with power and the duty:

"To have and exercise general supervision over the administration of the assessment and tax laws of the State, over assessors and over county boards in the performance of their duties as county boards of equalization to the end that all assesments of property be made relatively just and equal at true value in substantial compliance with law."

If the officers acted within authority, it was because of the provisions of section 6054, Comp. Laws Utah 1917, as amended by chapter 53, Laws of Utah 1931, p. 234 (now R. S. Utah 1933, 80-10-61), which is as follows:

"In case property is sold to the county as purchaser pursuant to the provisions of law, and is subsequently assessed, no person shall be permitted to redeem from such sale except upon payment also of the amount of such subsequent assessment, interest, penalty and costs, unless in cases involving $250.00 or less, in the judgment of the county commissioners and in all other cases in the joint judgment of the county commissioners and of the State tax commission, the interest of the state and the county will be subserved by accepting a less sum than the amount due for taxes, interest, penalty, and costs."

Appellant's contention is that this section affords no defense for the action of the county and state officers because, under its provisions, their discretion or judgment may be exercised with respect to accepting less than the total amount of taxes, interest, penalties, and costs only after the taxed property is sold to the county for delinquencies and not when, as here, such sale has not been made; that such officers have no discretion in the premises unless it be the ministerial duty by supervision of the county treasurer to see that the total amount of tax, interest, penalties, and costs is collected or the property sold in satisfaction thereof. It is conceded that if the hospital property had been sold to the county for the taxes of any one of these years, and taxes subsequently assessed as provided in section 6053 (Comp.

Laws 1917), the county board of commissioners with the concurrence of the State Tax Commission would have had authority under section 6054, as amended, to permit redemption for less than the taxes, interest, penalties, and costs where the "interest of the state and the county will be subserved."

We think it is sacrificing the spirit and intent of the statute to its mere letter to say that in this case the authority of the board of county commissioners and the State Tax Commission did not exist merely because the treasurer had not sold the property to the county at tax sale. The property was advertised to be sold in 1929 and again in 1930, but sale thereof was enjoined by court order. If the parties had waited until December of 1932, the county treasurer would then have advertised the property for sale for delinquent taxes and would have sold the same to the county. Thereafter the county board, with concurrence of the State Tax Commission, would have had power to make the compromise settlement if in their joint judgment it was to the best interest of the state and county. This is not a case where the board of commissioners, after time for equalization and before delinquency or time of sale, attempted to make a reduction in the tax. The property should have been sold to the county for delinquent taxes, and undoubtedly the treasurer would have done so but for the restraining orders of the court.

To arrive at the meaning of the section, a short review of its history and its status or relation to other provisions of the tax law may be helpful. Prior to 1919 the statute, section 6018, Comp. Laws Utah 1917, provided for sale of property for delinquent tax at auction to the highest and best bidder for cash, that is, one who would pay the taxes and costs for the smallest undivided portion of the property assessed, and in default of a bidder the property was to be sold to the county, and certificate of sale issued therefor to the county pursuant to section 6021. Provision for redemption in cases where the property had been sold to a purchaser other than

the county was made in section 6054. In section 6052 it was provided that where property was sold to the county subsequent taxes should be assessed in the same manner as if it had not been purchased, but that the property must not be exposed for sale so long as the county held the certificate of sale, and the sale under such assessment must be adjourned until time of redemption under the previous sale had expired. Section 6054 provided for redemption in case of sale to the county, as follows:

"In case property is sold to the county as purchaser pursuant to the provisions of law, and is subsequently assessed, no person must be permitted to redeem from such sale except upon payment also of the amount of such subsequent assessment, interest, penalty, and costs, unless, in the judgment of the county commissioners, the interest of the state and the county will be subserved by accepting a less sum than the amount due for taxes, interest, penalty, and costs."

This section remained as it was in Comp. Laws Utah 1917 until the legislative session of 1931 when it was amended to read as first above set forth. In the meantime the policy of the state was changed with respect to the sale of property for delinquent tax. In 1919, section 6018 was amended to eliminate the procedure of sale by auction to any bidder and provided for sale to "the county [of] all delinquent real estate to pay the taxes, penalty and costs for which such real estate is liable." Laws of Utah 1919, c. 121, p. 338, section 6023, was amended at the same session to permit of sale or assignment of the interest of the county in any real estate sold to it for delinquent taxes to a mortgagee or lien holder only, after sale and before expiration of redemption period. Laws of Utah 1919, c. 122, p. 339. Since 1919 all sales of delinquent real estate have been made to the county and there has been no such thing as an individual purchaser at tax sale. Only after expiration of redemption period and issuance of auditor's deed, if property is not redeemed and tax paid, may the county sell such property to any purchaser. R. S. Utah 1933, 80-10-68, as amended by Laws of Utah 1933, c. 62, p. 111.

By section 6054, before amendment in 1931, the board of commissioners had power to accept a less sum than taxes, interest, and costs in cases where the property was sold to the county and subsequently assessed. By the 1931 amendment this power was retained in the county board in cases involving $250 or less, but in cases involving a larger amount such action must be by "joint judgment of the county commissioners and of the state tax commission." It would seem, therefore, that the legislative intent throughout was to confer upon the board of county commissioners, and now that board and the State Tax Commission where more than $250 is involved, the power to adjust or compromise delinquent taxes for purposes of redemption where the county only had the lien to the exclusion of individual purchasers. Up to the time of sale the county has a tax lien on the property, but after sale the form of its interest is changed to a certificate of sale. The form is changed but the essence is the same. The interest of the county is the same, except the situation is advanced one step toward title by reason of sale. In each instance the underlying reasons for the exercise of the power by the officials are the same; that is, to collect the tax money and restore the property to an active taxpaying basis. We conclude that the board of county commissioners and State Tax Commission had authority under section 6054, as amended, in the exercise of a joint judgment, to determine whether the interest of the state and county would be subserved in accepting less than the total amount of tax, interest, penalty, and costs. In this case, the amount involved being more than $250, it required the joint judgment of the two boards. They exercised such judgment and accepted less than the total amount. This being a matter within their discretion, it follows the individual defendants cannot be held personally liable for mistake in exercising such judgment, if it be a mistake, in the absence of fraud, bad faith, or collusion.

Appellant, however, asserts that bad faith is shown by the allegations of the complaint because it says the Tax

Commission, in its written decision, took a position as to law contrary to the decision of this court in the case of *William Budge Memorial Hospital* v. *Maughan,* ■ supra. The court in that case expressly refrained from passing on the legal effect of the amendment of the articles of incorporation of the hospital. The State Tax Commission came to the conclusion the hospital had changed its character to that of a charitable institution by the adoption of the amendment, but held that in any event the matter involved a controversial question which could be definitely settled only by the courts. To avoid expense and delay incident to further litigation, the commission approved the acceptance of the offer of the hospital to pay the taxes for the three years on the basis of assessment for 1932. Whether or not the tax commissioners were correct in their analysis of this court's decision or in reaching the conclusion they did is of no moment here. It is apparent to us the board of commissioners and the State Tax Commission acted in the utmost good faith, and in the belief the settlement effected was for the best interest of the state, county, and the city.

For another reason the demurrers were properly sustained. If, on the grounds alleged, or any others, the compromise settlement was void, then no loss is shown to have been suffered by Logan City. A void order of release is ineffective to discharge a valid tax lien, and the ■ property is still subject to the tax. "An unauthorized release will not discharge a tax lien." 61 C. J. 947; *Yellowstone Pac. & Prov. Co.* v. *Hays,* 83 Mont. 1, 268 P. 555. So, also, "if payment is less than the full amount due its receipt does not estop the State or municipality from collecting the balance." 61 C. J. 970. Plaintiff has not alleged that it moved against the county treasurer to require him to collect the tax by sale of the property, or against the board of county commissioners to require it to proceed by foreclosure to enforce its lien. This additional and cumulative method of foreclosure is now provided by statute. Laws of Utah 1927, c. 74, p. 125 (now R. S. Utah 1933, 80-10-41). Until

plaintiff has exhausted its remedy with respect to collection of the tax, it is in no position to claim loss or damage and to proceed against the individual officers to recover an alleged loss or damage from them personally.

The judgment of the district court is affirmed, with costs to respondents.

ELIAS HANSEN, C. J., and EPHRAIM HANSON, MOFFAT, and WOLFE, JJ., concur.