[L. A. No. 17869. In Bank.—Sept. 30, 1941.]

COUNTY OF SAN BERNARDINO, Petitioner, v. HOW-ARD L. WAY, as County Surveyor, etc., Respondent.

Jerome B. Kavanaugh, District Attorney, Albert E. Weller, Chief Deputy District Attorney, O'Melveny & Myers, James L. Beebe and Ray H. Lindman for Petitioner.

Clyde C. Woodworth for Respondent.

CURTIS, J.—The petitioner, the county of San Bernardino, filed in this court its petition for a writ of *mandamus* to compel the respondent county surveyor to prepare a diagram of the property included within Road Improvement District No. 38 of the County of San Bernardino, and to make an assessment, both as provided by the Refunding Assessment Bond Act of 1935. (Stats. 1935, p. 2023, as amended Stats. 1937, p. 1675; Stats. 1938, Ex. Sess., p. 73; Stats. 1939, p. 1637; Deering's Gen. Laws, Act 881 j.)

Road Improvement District No. 38 was organized in 1927 under the provisions of the Road Improvement District Act of 1907. (Stats. 1907, p. 806, as revised Stats. 1921, p. 312, amended Stats. 1925, p. 327, Deering's Gen. Laws, 1937, Act 3276.) The district lies entirely within unincorporated territory of the county of San Bernardino except for a shoestring strip of city of San Bernardino territory running through the district and connecting the city proper with a portion of the city water system. Bonds of the district were issued in the principal sum of $81,400, bearing interest at the rate of six per cent per annum. They were issued to mature $4,070 annually in the years 1928 to 1947, inclusive. The outstanding bonded indebtedness of the district as of June 10, 1940, was $88,753.04, of which amount $65,120 was principal and $23,633.04 was interest. The outstanding bonds are payable from special assessments levied annually in accordance with the assessed value of the land; and the amount of unpaid assessments heretofore levied to pay the principal and interest of these bonds is in excess of $50,000. The assessed valuation of taxable land in the district for the fiscal year 1940–1941 was $36,950. Of the 182 parcels of land in the district, only 12 were current in the payment of general taxes and special assessments in 1940–1941. Property once delinquent has remained so in every subsequent year, with

the result that the percentage of tax delinquencies has increased annually to reach the present figure of ninety-three per cent.

The instant refunding proceeding was commenced by the adoption by the Board of Supervisors of the County of San Bernardino on the 10th day of June, 1940, of a resolution declaring its intention to refund the outstanding indebtedness of Road Improvement District No. 38, pursuant to the provisions of the Refunding Assessment Bond Act of 1935, as amended. The resolution set forth that the consent of the council of the city of San Bernardino had been obtained, in compliance with the statutory requirements governing a district embracing both incorporated and unincorporated territory. The plan proposed by said resolution provided for the settlement of the obligations of the road improvement district in the following manner: (1) all unpaid *ad valorem* assessments levied for payment of bonds of the district would be cancelled; (2) the outstanding bonds and interest coupons of the district would be surrendered and cancelled; (3) all delinquent general taxes upon land in the district for the fiscal years prior to 1939–1940, amounting to $10,-678.77, would be contributed to assist in the refunding of the indebtedness of the district and cancelled, pursuant to section 1.1 of the Refunding Assessment Bond Act of 1935, as amended (Stats. 1939, p. 1637) ; and (4) a refunding assessment in the amount of $30,000 would be levied and refunding bonds maturing over a period of ten years would be issued in settlement of the unpaid outstanding bonds of the district. It is further recited in said resolution that the legislative bodies of the county of San Bernardino, the city of San Bernardino, the city of San Bernardino Elementary School District and High School District, and the San Bernardino Valley Union Junior College District have agreed to the cancellation of the delinquent general taxes aforementioned and have by resolution determined that the public interest and necessity require the contribution and appropriation of such delinquent taxes. The resolution of intention fixed a time and place when and where any objections against the proposed refunding plan might be made by any person interested or by any owner of property within said district. At the time fixed for the hearing of said matter, no protest or objection having been made to the proposed refunding

plan and the written consent of the owners of more than fifty per cent of the land in the district having been filed, it was ordered by the board of supervisors of said county that the refunding of the outstanding indebtedness of said district be made in accordance with said resolution of intention. It was further ordered at said hearing that the county surveyor of said county make a diagram of the property upon which a reassessment was to be levied and prepare a reassessment for the purpose of refunding the outstanding indebtedness of said district in accordance with said proposed refunding plan and in pursuance of the provisions of the Refunding Assessment Bond Act of 1935, as amended. The State Controller of the State of California gave his written consent to the appropriations and contributions of the delinquent general taxes made by the respective legislative bodies above mentioned, upon condition that the statutory authority governing this particular procedure be adjudicated valid and constitutional before cancellation of these taxes is made. The county surveyor refused to comply with the aforementioned order of the board of supervisors, and this proceeding was instituted for the purpose of compelling compliance on the part of the county surveyor with said order.

Respondent concedes that the reassessment proceedings were in conformity with the requirements of the Refunding Assessment Bond Act of 1935, as amended. The several grounds assigned by respondent for his refusal to perform the duties imposed upon him by the statute are concerned entirely with the constitutionality of section 1.1 of the act, added in 1939. (Stats. 1939, p. 1637.) In determining the validity of this section, which provides for the cancellation of delinquent taxes as a contribution to aid in the refunding of the indebtedness of a special assessment district, we shall consider the various legal questions raised in the application for this writ and the respondent's demurrer thereto in the order of their presentation.

The first point urged by respondent is that section 1.1 violates article IV, section 31, of the Constitution of this state, which denies to the legislature the power to authorize any county, city or other political corporation to make a gift or donation of "public money or thing of value" to any person or individual. Respondent contends that the gen-

eral taxes which are proposed to be cancelled in this refunding proceeding are things of value within the meaning of this constitutional provision, and that the cancellation constitutes a gift to the private owners of the property or the holders of bonds of this Road Improvement District No. 38, or both. In support of his argument that legislation authorizing the cancellation of a tax which has become due and payable, is invalid, respondent cites *Estate of Stanford,* 126 Cal. 112 [58 Pac. 462, 45 L. R. A. 788], and like inheritance tax cases, wherein it was held that the right to such tax vests in the state at the date of the taxable transfer, and that the legislature cannot by subsequent acts reduce the rate of taxation thereon, for the reason that to do so would in effect be a gift of the property of the state to the extent of the reduction, in violation of the inhibition of the Constitution. Such cases, being concerned simply with an attempted remission of taxes to private parties, have no application to this proceeding, wherein petitioner relies upon the public purpose of the instant reassessment plan to overcome the constitutional objection advanced here by respondent. Pertinent to this phase of our discussion is the following language from *County of San Diego* v. *Hammond,* 6 Cal. (2d) 709, 721 [59 Pac. (2d) 478, 105 A. L. R. 1155], wherein this same provision of the state Constitution was unsuccessfully urged in opposition to the proposed use of county funds in special assessment district refunding: "It is well settled that in determining whether any appropriation of public funds is to be deemed a gift, 'the primary and fundamental subject of inquiry is as to whether the money is to be used for a public or private purpose. If it is for a public purpose . . . it is not, generally speaking to be regarded as a gift.' (*City of Oakland* v. *Garrison,* 194 Cal. 298, 302 [228 Pac. 433].)"

From the foregoing statement of facts in this case, it appears that the bonded indebtedness of the road improvement district alone was as of June 10, 1940, almost two and one-half times the assessed valuation of the land in the district. Delinquent general taxes and special assessments were approximately one and two-thirds times the amount of the assessed valuation of the property. This condition of affairs, supporting petitioner's assertion that the land in this district is unable to carry such burden of taxes and assessments,

undoubtedly prompted the county board of supervisors to initiate proceedings under the Refunding Assessment Bond Act of 1935, as amended, to refund said bonded indebtedness and to restore the delinquent tax property to the tax roll. Accordingly, the legislative bodies of the county, the city and the school districts in which the land lies, found by appropriate resolution, pursuant to the provisions of section 1.1 governing the circumstances under which the cancellation of delinquent general taxes may be made to assist a particular refunding plan, that the public interest and necessity require the contribution of such delinquent taxes, that the general interest of the respective public corporations will be served and promoted by the contribution, and that the refunding of the indebtedness of the road improvement district will tend to restore property in this road improvement district to the tax roll or keep it upon the tax roll, and will tend to promote the improvement and development of property in such road improvement district. ■■ The combined declarations of these legislative bodies, while perhaps not conclusive, are entitled to considerable weight in substantiating the public purpose of these taxing units' cancellation of all unpaid general taxes for fiscal years prior to 1939–1940, amounting to $10,678.77, in aid of the settlement plan proposed. ■■ The mere fact that the property owners and bondholders incidentally benefit from the scheme does not, under the cases of *County of Los Angeles* v. *Jones*, 6 Cal. (2d) 695, 706 [59 Pac. (2d) 489], and *County of San Diego* v. *Hammond*, *supra*, at p. 726, render the contribution invalid. In these last-named cases, wherein the conditions in *ad valorem* special assessment districts sufficient to justify the appropriation of public funds in refunding proceedings were reviewed, it was held that a public purpose is served by the restoration of delinquent property to the tax roll, and the same point raised here by respondent under a similar factual situation involving like legal principles is controlled by these decisions. So far as the gift clause is concerned, there can be no effective distinction between the contribution of the tax moneys after collection and the contribution of the taxes themselves. Since under the circumstances shown to exist here, the aforesaid public bodies could have made a cash contribution in furtherance of the refunding proceeding under the law as established in the Jones

and Hammond cases, *supra,* without violating section 31 of article IV of the Constitution of this state, it necessarily follows that their contribution by cancellation of the delinquent general taxes aforementioned must likewise be deemed for a public purpose, and the contention of respondent that section 1.1 is unconstitutional in that it authorizes or permits the appropriation of public funds for a private purpose cannot be sustained.

 Respondent next invokes section 1 of article XIII of the Constitution of this state, commanding that "All property in the state . . . shall be taxed in proportion to its value. . . . " It is respondent's position that the cancellation of taxes authorized by section 1.1 operates as a remission, which is not permitted under uniformity of taxation, as article XIII, section 1, of the state Constitution has been construed to require. (*Wilson* v. *Supervisors of Sutter County,* 47 Cal. 91.)

That a remission of taxes is invalid under the Constitution of this state is not debatable. To permit such procedure would tend to promote tax delinquency and would result in great uncertainty in the collection of public revenues. However, in the present case the contribution of taxes by way of cancellation does not constitute a remission, which term implies forgiveness or voluntary relinquishment of a claim, or part thereof, without any consideration therefor. (See 54 C. J. 106; *Kilgore Lumber Co.* v. *Thomas,* 95 Ark. 43, 48 [128 S. W. 62, 64]; *Gambell* v. *Irvine* [Mo. App. 1937], 102 S. W. (2d) 784, 790.) In the instant proceeding the bondholders of the road improvement district have, in effect, agreed with the various legislative bodies of the county, city and school districts entitled to the general taxes in question that, in consideration of the proposed cancellation, the said bondholders will surrender their bonds and interest coupons at something less than 33⅓ cents on the dollar and that all of the assessments levied for the payment of their bonds may be cancelled. Thus, the reduction of the indebtedness of the district furnishes the consideration for the cancellation. This distinct factual situation nullifies the force of respondent's argument based on cases from other jurisdictions wherein, under constitutional provisions similar to ours, legislative enactments relating to the *remission* of taxes upon tax-delinquent property were held to run counter to the

rule of uniformity. *State ex rel. Richards* v. *Armstrong,* 17 Utah, 166 [53 Pac. 981, 41 L. R. A. 407] ; *State of Minnesota ex rel. Matteson* v. *Luecke,* 194 Minn. 246 [260 N. W. 206, 99 A. L. R. 1053] ; *State* v. *O'Quinn,* 114 Fla. 222 [154 So. 166] ; *Richey* v. *Wells,* 123 Fla. 284 [166 So. 817].) [Parenthetically it might be said here that the Refunding Assessment Bond Act of 1935, as amended, leaves it entirely optional with each bondholder of the road improvement district whether he will retain his old bonds or whether he will avail himself of the rights accorded to him under said refunding proceeding. (*County of San Diego* v. *Hammond, supra,* at p. 719.)]

Neither petitioner nor respondent has referred us to any case wherein was involved the question of cancellation of taxes in connection with a statute providing for a settlement of a bonded indebtedness or tax or assessment obligation of a special district, and apparently there is but little judicial authority on the precise type of legislation here under consideration. However, petitioner does call to our attention several recent decisions wherein the courts of these last-mentioned jurisdictions cited by respondent, as well as those elsewhere, have held that the constitutional requirements that the legislature should provide for a uniform and equal rate of *ad valorem* taxation upon just valuations of all taxable property, and that all property should be taxed according to these principles, do not forbid the enactment of statutes designed to aid delinquent taxpayers, through sale proceedings and compromise settlements, to retain their land for less than the amount of the original assessments against their property. (*Logan City* v. *Allen,* 86 Utah 375 [44 Pac. (2d) 1085] ; *State ex rel. Equity Farms, Inc.,* v. *Hubbard,* 203 Minn. 111 [280 N. W. 9] ; *Messer* v. *Lang,* 129 Fla. 546 [176 So. 548, 113 A. L. R. 1073] ; *Blackford* v. *Judith Basin County,* 109 Mont. 578 [98 Pac. (2d) 872, 126 A. L. R. 639].) The significance of these cases, arising out of a variety of circumstances dependent upon prevailing local conditions, but concerned primarily with questions of appropriate relief to be afforded former owners of land forfeited to the state for nonpayment of taxes, lies in their common recognition of the necessity for some remedial legislation calculated to bring about an orderly restoration of forfeited property to the tax rolls as revenue producing assets. Analogous in

principle is the present situation, where the increasing delinquencies—of the 182 parcels of land in the district, only 12 are current in tax payments and 170 are delinquent, 157 of the latter number, or over five-sixths of the entire area, having already been forfeited to the state—furnish potent evidence of the overburdened condition of this road improvement district and of the critical need for some readjustment.

It cannot be denied that the word "taxation" as used in the Constitution embraces both assessment and collection, and it would simply flout the rule of uniformity to say that the levy shall be uniform and equal, but the collection may be variable and unequal. But the proposed settlement plan, involving the cancellation of taxes as above outlined, would not operate in a manner inconsistent with the constitutional provision in question. It appears that the taxes in this district have been properly levied, that the taxing authorities have exhausted every means available to collect the full amounts, and that the required pyramiding of taxes and assessments, which scheme necessitates that the levies be made by the district not only for principal and interest due in the current year, but also for past due principal and interest, will result in the property becoming more and more delinquent. Section 1.1 outlines a method of relief for such an aggravated condition and to prevent abuse, this section authorizes cancellation of taxes only after the legislative bodies of the taxing entities concerned have made findings that the public interest and necessity require the contribution, and that the refunding plan will tend to restore property in the assessment district to the tax roll or keep it upon the tax roll. ■ It is the purpose of uniformity of taxation that all property in the state carry its fair burden and contribute its just amount in taxation to the support of the various public bodies which levy taxes. ■ The statute under discussion promotes this policy by providing a means for the restoration of delinquent property to an active taxpaying basis, producing a substantial benefit not only to the former owner, who again enters the ranks of a taxpayer, but also helping to a *pro rata* extent every other taxpayer because of his re-entry in that role. Under the settlement plan proposed in the instant proceeding the general taxes for 1939–1940 and subsequent fiscal years are expected to be

paid, and it is the opinion of the various aforementioned legislative bodies, the bondholders and the property owners interested that if the refunding is accomplished, the refunding assessments and the general taxes thereafter will be paid. From these considerations it is manifest that section 1.1 of the Refunding Assessment Bond Act of 1935, as a settlement section, whose purpose is to furnish an effective means whereby delinquent property might be returned to the tax roll and bear its proper share of the tax burden, is in nowise repugnant to the provisions of article XIII, section 1, of the state Constitution.

Likewise without merit is respondent's contention that section 1.1 contravenes the requirement of equal protection of the laws embodied in both the state and federal Constitutions. The equality guaranteed is equality under the same conditions, and among persons similarly situated. Upon this well-settled interpretation is predicated the general rule that the classification must not be arbitrary, but must be based upon some difference in the classes having a substantial relation to the purpose for which the legislation is designed. An examination of the instant factual situation convinces us that the peculiar financial exigencies of these *ad valorem* tax and assessment districts furnished a reasonable basis for the legislature's selection of this single class of property as the subject of the particular remedial legislation under consideration. A discrimination is not arbitrary, of course, where founded on sound reasons of public policy; so that our determination earlier in this opinion, under authority of *County of Los Angeles* v. *Jones, supra,* at pp. 704–707, and *County of San Diego* v. *Hammond, supra,* at pp. 720–727, that the refunding plan here contemplated is for a public purpose assumes additional importance at this point of our discussion. This identical question was treated in *State ex rel. Equity Farms, Inc.,* v. *Hubbard, supra,* wherein the Supreme Court of Minnesota, in sustaining the validity of a statute relating to the repurchase of land after forfeiture to the state for nonpayment of taxes, said at page 118: "Any classification is permissible which has a reasonable relation to some permitted end of governmental action." Furthermore, the provision for cancellation of the general taxes aforementioned as a contribution in the refunding proceeding does not discrimi-

nate against the nondelinquent taxpayers, for they, too, derive substantial benefit from the settlement plan in that they will receive credit for the *ad valorem* special assessments which they have paid (Refunding Assessment Bond Act of 1935, as amended Stats. 1937, ch. 603, sec. 7, pp. 1675, 1679–1680), and they, like other property owners in the district, will be relieved of any danger from pyramiding assessment levies to pay principal and interest of the road improvement district bonds. These features of section 1.1 render untenable respondent's claim that this legislation is obnoxious to the constitutional requirement of equal protection of the laws.

Closely allied to the last-mentioned objection advanced by respondent, but separately discussed by him, is his contention that because section 1.1 is limited in application to the cancellation of taxes in *ad valorem* assessment and taxing districts only, it conflicts with the provisions of article IV, section 25, of the Constitution of this state, forbidding special or local legislation. It is our opinion that this point is not well taken. The authorities are legion to the effect that the requirement of "general laws" and the prohibition of "special laws" do not prevent reasonable classification. Expressive of this well-established legal principle is the following language from *Martin* v. *Superior Court,* 194 Cal. 93, 100, 101 [227 Pac. 762] : "The classification, however, must not be arbitrarily made for the mere purpose of classification, but must be based upon some distinction, natural, intrinsic, or constitutional, which suggests a reason for and justifies the particular legislation. That is to say, not only must the class itself be germane to the purpose of the law but the individual components of the class must be characterized by some substantial qualities or attributes which suggest the need for and the propriety of the legislation. Subject to these limitations a law is general despite the fact that it operates only upon a class of individuals or things, if it applies equally to all persons or things within the class to which it is addressed [citing cases]." The legislature has a broad discretion in the exercise of its power to classify, and "the legislative classification will not therefore be disturbed unless it is palpably arbitrary in its nature and neither founded upon nor supported by reason." (*Martin* v. *Superior Court, supra,* at p. 101.)

That good and sufficient reason existed for the enactment of section 1.1 is forcefully demonstrated by the peculiar financial straits in which these special assessment and taxing districts were enmeshed because of the pyramiding of the *ad valorem* special assessments and taxes, and the resulting problems of tax delinquency existent therein have been the subject of recent discussion by this court in *County of Los Angeles* v. *Jones, supra,* at pp. 705, 706, and *County of San Diego* v. *Hammond, supra,* at pp. 716, 724–726. ■ Furthermore, the conditions rampant in these districts and provocative of this legislation are matters of common knowledge, to be noticed judicially. As was stated in *Martin* v. *Superior Court, supra,* at p. 102: "In determining the need and propriety of classified legislation, where the same does not appear upon the face of the legislative enactment, the court may resort to its judicial knowledge of the contemporaneous conditions and situation of the people, the existing economic, sociologic, and civic policy of the state and all other matters of common knowledge."

■ Nor is there any merit to respondent's argument that section 1.1 of the Refunding Assessment Bond Act of 1935 is a special and not a general law because reclamation districts, irrigation districts and districts under the Improvement Bond Act of 1915 (Stats. 1915, p. 1441; Deering's Gen. Laws, 1937, Act 8209) are not included within its scope. This criticism goes only to the policy of the legislation in question and the wisdom of the legislature in determining to exclude the aforementioned districts from the benefits of the tax cancellation provision, which considerations are not the concern of the courts. Illustrative of the limited extent of our inquiry in such circumstances is the following observation made in *Heron* v. *Riley,* 209 Cal. 507, 518 [289 Pac. 160]: "If good ground for the classification exists, such classification is not void because it does not embrace within it every other class which might be included."

The classification being permissible, it cannot be denied that section 1.1 purports to, and undoubtedly does, in its operation and effect, apply equally and uniformly to all persons and things falling within the designated class, and such section is therefore not vulnerable to attack as special legislation in violation of the terms of article IV, section 25, of the state Constitution.

Respondent finally urges that section 1.1 contravenes article I, section 10, of the United States Constitution, and article I, section 16, of the California Constitution, in that the cancellation of the delinquent taxes levied for payment of general obligation bonds of the county, city and school districts above named not only impairs the bondholders' contract in respect to their security, but also violates the taxpayers' contractual rights created by the issuance of said bonds. In considering first the rights of the general obligation bondholders as affected by the terms of the assailed legislative enactment, a brief *résumé* of the pertinent legal principles of constitutional law and their application will facilitate our determination of the merits of the respondent's objection.

 Laws in existence at the time of the issuance of municipal bonds, under the authority of which such bonds are issued, enter into and become a part of the contract to such an extent that the obligation of the contract cannot thereafter be impaired or fulfillment of the bond obligation hampered or obstructed by a change in such laws. (*United States ex rel. Von Hoffman* v. *City of Quincy*, 4 Wall. (71 U. S.) 535, 550 [18 L. Ed. 403].) Nothing is more material to the obligation of a contract than the means of enforcement. The ideas of validity and remedy are therefore inseparable, and both are parts of the obligation which is guaranteed by the Constitution against impairment. (*Walker* v. *Whitehead*, 16 Wall. (83 U. S.) 314, 317, 318 [21 L. Ed. 357].) But a contract obligation is not impaired by a change of law unless such alteration deprives a party of a substantial right or remedy. (*Sturges* v. *Crowninshield*, 4 Wheat. (17 U. S.) 122, 200 [4 L. Ed. 529].) This important limitation, defining the character of the rights deemed to be within the protection of the constitutional inhibition under consideration, was approved in the leading case of *United States ex rel. Von Hoffman* v. *City of Quincy, supra,* at pages 553, 554: "It is competent for the States to change the form of the remedy, or to modify it otherwise, as they may see fit, provided no substantial right secured by the contract is thereby impaired. No attempt has been made to fix definitely the line between alterations of the remedy, which are to be deemed legitimate, and those which, under the form of modifying the remedy, impair substantial rights. Every case must be determined upon its own circumstances."

Consonant with these basic principles, it is manifest that if, notwithstanding a modification of law, the party can enforce his rights with substantially the same degree of effectiveness as before, his contract rights have not been violated. Of the numerous authorities cited by petitioner as illustrative of the doctrine that subsequent legislation not encroaching upon a *valuable* contractual right is unimpeachable upon constitutional grounds, the following representative list is sufficient to demonstrate the prevailing uniformity of decision upon this point. (*Davidson* v. *Town of Kirkwood,* 152 Ga. 357 [110 S. E. 154]; *Ancient Order of United Workmen* v. *Paragould Special School District No. 1,* 143 Ark. 493 [222 S. W. 368]; *Sitte* v. *Paulson,* 56 N. D. 146 [216 N. W. 344]; *Board of Com'rs* v. *C. La Carde Co.,* 167 La. 612 [120 So. 25]; *Hanson* v. *Burris,* 86 Utah 424 [46 Pac. (2d) 400].)

Obviously at variance with this settled interpretation of the constitutional prohibition under discussion is respondent's argument that *any* change of law, no matter how trivial, constitutes an impairment of the contract. Furthermore, an examination of the cases upon which respondent relies to support his contention reveals no ruling therein in conflict with the aforementioned principles. (*Hendrickson* v. *Apperson,* 245 U. S. 105 [38 Sup. Ct. 44, 62 L. Ed. 178]; *Moore* v. *Otis,* 275 Fed. 747; *Moore* v. *Gas Securities Co.,* 278 Fed. 111; *Rorick* v. *Board of Commissioners of Everglades Drainage District,* 57 Fed. (2d) 1048; *State* v. *Young,* 29 Minn. 474 [9 N. W. 737]; *Martin* v. *Saye,* 147 S. C. 433 [145 S. E. 186].) Even a casual reading of these opinions discloses that in each instance the assailed legislation, enacted subsequently to the issuance of the bonds, did violence to the *substantial* rights of the bondholders in that it directly diminished the material benefits of the earlier law by reducing or diverting to other purposes the valuable security previously pledged for payment of the bonds, and the later law was therefore properly held void to that extent. Typical of these cases is *Martin* v. *Saye, supra,* wherein it was held that purchasers of county bonds, issued under a statute providing for the placing by the county treasurer of specified moneys in a special fund and their application solely to the payment of the principal of the bonds as it became due, were justified in relying upon all the provisions of the statute, including those fixing and pledging the security for payment of the

bonds, as being part of the contract of sale, and that a subsequent statute attempting, by diversion of the funds, to divest the bondholders of a vested right accruing under the contract, was invalid because of its impairment of the obligation of the contract. Respondent directs our attention to isolated passages of this opinion wherein the court employed certain general language which, severed from the connection in which it was used, might be construed to mean that the materiality of the change of law affecting existing contract rights is of no significance, and that any alteration, however inconsequential, must be condemned. However, such expressions in the opinion of the court must be read with the context and in view of the issue presented, and when so considered, such language is not susceptible of the broad interpretation respondent seeks to assign to it. In this state the soundness of the distinction based upon consideration of whether the change effected by the later legislation is of such character as to impair contractual obligations was recognized and approved in *Metropolitan Water District* v. *Toll*, 1 Cal. (2d) 421 [35 Pac. (2d) 519], wherein a statute providing for a different method for securing funds for the payment of interest but not diminishing the value of the bondholders' investment, was declared not to offend the constitutional principle of inviolability of contracts.

In line with the foregoing considerations it becomes important in the instant case to determine whether the cancellation of the delinquent taxes under authority of section 1.1 adversely affects the general obligation bondholders' rights in a material degree so as to constitute an impairment of their contract.

As previously stated in this opinion, section 1.1 authorizes the contribution of all or any part of the *delinquent* taxes levied upon land lying within the road improvement district, the indebtedness of which is to be refunded. In the present proceeding the contribution and cancellation is to be of all taxes for the fiscal years prior to 1939–1940, including those levied for the payment of the general obligation bonds issued by the county, city and school districts concerned herein. In support of the validity of the reassessment plan petitioner calls attention to the fact that none of these last-named bond issues are in default as to principal or interest, and that each of the taxing units aforementioned has a con-

tinuing power to levy taxes upon all property within its boundaries for the payment of principal and interest hereafter coming due. In these circumstances respondent's argument that this proposed modification as to the security will invade the substantial rights of the general obligation bondholders' contract is without foundation, for it is difficult to perceive how said bondholders will sustain any injury by the cancellation of delinquent taxes which are not collectible and which therefore add nothing to the value of said bondholders' contract. Furthermore, it appears that these bondholders will, in fact, be benefited by the present refunding proceeding, for the settlement of the road improvement district's indebtedness will restore the property to the tax roll so that the taxes for 1939–1940 and subsequent years will be paid. No change in the relative status of the taxing units has been made and their continuing power to tax the property in their respective districts protects the bondholders fully as to their security. Although it is indisputable that the bondholders have a right to these delinquent taxes as part of the originally intended security for their bonds, yet where that portion of the security has no actual value, its elimination, as a feature of consideration in a settlement plan authorized by subsequent legislation for the purpose of relieving pressing financial conditions existing in certain districts of the state, does not constitute an ''impairment'' of the bondholders' contract and will not operate to defeat the later statute enacted for the general public interest. Accordingly, it is our conclusion that section 1.1 does not diminish the value of said bondholders' contractual rights by its authorization of the contribution and cancellation of delinquent taxes in these special assessment districts, and its validity in respect to these bondholders cannot be questioned.

The remaining point to be considered involves the effect of the terms of section 1.1 upon the rights of the general taxpayers of the county, city and school districts herein concerned. It is respondent's argument that these taxpayers have contractual rights in the delinquent taxes levied for payment of the principal and interest of the general obligation bonds, and that the cancellation of these taxes under authority of section 1.1 would constitute an impairment of these rights, which are entitled to protection under the aforementioned contract clauses of the federal and state Constitu-

tions. ▇ It is the settled doctrine in California that upon the voting of bonds in connection with these assessment proceedings, there arises between the state or its agency and the taxpayers certain contractual obligations which must be respected by any subsequent legislation or by any action on the part of public officials. (*Peery* v. *City of Los Angeles,* 187 Cal. 753, 767 [203 Pac. 992, 19 A. L. R. 1044] ; *O'Farrell* v. *County of Sonoma,* 189 Cal. 343, 348 [208 Pac. 117] ; *Golden Gate Bridge & Highway District* v. *Filmer,* 217 Cal. 754, 757 [21 Pac. (2d) 112, 91 A. L. R. 1] ; *Metropolitan Water District* v. *Toll, supra,* at p. 429.) Thus, in determining the issue of alleged impairment of the taxpayers' contract, the character of the change effected by the subsequent legislation is of the same controlling force as in the case of the general obligation bondholders' contract heretofore discussed, for if it appears that section 1.1 would operate in any way to the prejudice of the taxpayers, this statute cannot be upheld.

▇ With respect to the instant proceeding, respondent argues that the proposed cancellation of the delinquent taxes will necessitate an additional levy upon all taxable property in the aforementioned county, city and school districts, so that the liability of the taxpayers is correspondingly increased in violation of their contract. It is true that if there were any likelihood that these delinquent taxes could ever be collected, their cancellation would unquestionably be an impairment of the taxpayers' contractual obligation, and such change in derogation of their rights would be subject to constitutional condemnation. But that is not the situation here, where it appears that by the cancellation of uncollectible taxes, an important contributing factor in effectuating the settlement of the special assessment indebtedness of the road improvement district, the burden upon the taxpayers will be lightened rather than increased. An examination of the petition herein reveals that this road improvement district's indebtedness is so great that the taxpayers, aside from the faithful twelve, are not paying taxes or assessments, and that in a period of delinquency extending over eleven years, not a single parcel of the property has been redeemed nor has a buyer been found for any part of it at a tax sale. That the land and improvements within this road improvement district will be uniformly benefited by the settlement plan has

been expressly found by the legislative bodies of the taxing units concerned, as required by the provisions of section 1.1. The instant refunding proceeding, contemplating the reduction of the assessment indebtedness by approximately two-thirds and the cancellation of the aforementioned delinquent taxes prior to the fiscal year of 1939–1940, will restore the delinquent property to the tax roll so that the current and future taxes will be paid with respect to this latter, as well as other land in the road improvement district, and each parcel, rather than merely twelve, will assume its proper share of the tax burden. It is obvious that the taxpayers cannot be prejudiced by any diminution of their obligations. Where the change made in the existing law by the subsequent legislation redounds to the material advantage of the taxpayers, there is no impairment of the taxpayers' contract rights. (*Metropolitan Water District* v. *Toll, supra,* at p. 429.)

None of the objections advanced by respondent against the legality of this refunding proceeding are, in our opinion, well taken. As section 1.1 of the Refunding Assessment Bond Act of 1935, as amended, impairs neither the rights of the general obligation bondholders nor those of the taxpayers, and as its provisions do not contravene any constitutional inhibition, it must be sustained as a valid legislative enactment. It therefore follows that it is the duty of the respondent to make and prepare a diagram of the property within Road Improvement District No. 38 of the County of San Bernardino, and also to prepare a reassessment for the purpose of refunding the outstanding indebtedness of this district.

Let the peremptory writ issue as prayed for.

Gibson, C. J., Edmonds, J., Carter, J., and Traynor, J., concurred.

HOUSER, J.—I dissent.